United States Court of Appeals,

Fifth Circuit.

No. 94-41023.

Edward E. ROBINSON & Sandra Robinson, Petitioners-Appellees, Cross-Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellant, Cross-Appellee.

Dec. 5, 1995.

Appeal from a decision of the United States Tax Court.

Before REYNALDO G. GARZA, GARWOOD and DUHÉ, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:

## I.

## BACKGROUND

Edward and Sandra Robinson obtained a $60,000,000 jury verdict against a bank for wrongful failure to release a lien. This $60,000,000 included $6,000,000 for lost profits, $1,500,000 for mental anguish, and $50,000,000 in punitive damages. The Robinsons then settled their claims against the bank for $10,000,000 plus the release of a judgment that the bank held against the petitioners in the amount of $691,972.43 while the trial court was considering the bank's motion for a new trial. In the final judgment reflecting the settlement, which was drafted by the parties and signed by the trial judge, 95% of the settlement proceeds were allocated to mental anguish and 5% were allocated to lost profits.

The Robinsons received $4,935,152.43 of the settlement proceeds after paying attorneys' fees and costs. Of that amount,

1

they only reported five percent of the proceeds ($246,758)—the amount allocated to lost profits—as income on their 1987 joint income tax return. They contended that the other 95% was excludable under Section 104(a)(2) of the Internal Revenue Code as "damages received ... on account of personal injuries or sickness."[1]

The Internal Revenue Service ("IRS") considered 95%, rather than 5%, of the proceeds to be taxable, and recomputed the Robinsons' taxable income by adding 90% of the proceeds received by the Robinsons ($4,400,000). This added income eliminated a carried forward net-operating-loss deduction claimed in the 1988 tax year, and the IRS noticed deficiencies for the 1987 and 1988 tax years. The Robinsons then petitioned the Tax Court for redetermination, arguing that 95% of the settlement proceeds were excludable under Section 104.

At trial, the IRS discovered and asserted an additional deficiency based on the Robinson's discharge-of-indebtedness income from the bank's release of the $691,972.43 judgment in conjunction with the settlement. The Tax Court allowed the IRS to amend its pleadings to assert this discharge-of-indebtedness income.

After hearing the evidence and the parties' arguments, the Tax Court rendered judgment. It first found that the allocation of the settlement proceeds did not reflect the damages that the Robinsons suffered. Instead, the Robinsons were allowed to allocate the settlement proceeds in a manner that minimized their tax liability.

_____

[1]26 U.S.C. § 104(a)(2).

The Tax Court therefore refused to recognize the allocation contained in the final judgment, and reallocated the settlement proceeds among the various elements of damages that the jury awarded the Robinsons in their suit against the bank.

The Tax Court allocated the settlement proceeds based on the relationship of certain amounts awarded to the Robinsons by the jury. Because the Tax Court agreed that the punitive damages may have been reduced on appeal, it first allocated the proceeds based on the amounts awarded by the jury for compensatory damages. It then allocated the remaining balance to punitive damages. Using this method, the Tax Court allocated the proceeds as follows:

| Actual Damages: | Damages | Percentage of Damages |
|---|---|---|
| Lost Profits | $6,000,000 | 60.893 |
| Other Business Damages | 175,000 | 1.776 |
| Injury to Credit Reputation | 85,000 | .863 |
| Mental Anguish | 1,500,000 | 15.223 |
| Punitive Damages: | 2,093,360 | 21.245 |
| Settlement Less Prejudgment Interest | $9,853,360 | 100.000 |
| Prejudgment Interest | 146,640 | |
| Total Settlement Payment | $10,000,000 | |

3

The Tax Court then allocated the settlement proceeds based on the percentage of damages attributed to each item of damage. It therefore allocated 37.331% of the proceeds—the amounts attributable to punitive damages (21.245%), mental anguish (14.223%) and injury to credit reputation (.863%)—to damages for tort-like personal injuries. The Tax Court then held that $1,787,599.30—the 37.331% of the net payment (less prejudgment interest)[2] attributable to tort-like injuries—was excludable under Section 104, and that the balance of the net payment (including prejudgment interest) was includable in the Robinsons' 1987 gross income.

The Commissioner of Internal Revenue then appealed the Tax Court's exclusion of the portion of settlement proceeds allocable to punitive damages. The Robinsons cross-appealed, arguing that the Tax Court erred in its allocation of the proceeds, its refusal to subpoena the trial judge who presided over their suit against the bank, and its refusal to reopen the record to allow them to demonstrate deductions that would offset the discharge-of-indebtedness income.

## II.

### THE COMMISSIONER'S APPEAL

The Tax Court held that the portion of the Robinsons' settlement attributable to punitive damages was excludable from

---

[2]The Tax Court held that 100% of the amount allocated to prejudgment interest was includable in income.

4

their gross income as "damages received ... on account of personal injuries or sickness" under Section 104(a)(2) of the Internal Revenue Code.[3] The Commissioner appeals from this holding, arguing that, because they are not intended to compensate plaintiffs for personal injuries, punitive damages are not excludable from gross income under Section 104(a)(2). This Court recently held that punitive damages awarded under Texas law are not intended to compensate, and are therefore not excludable under Section 104(a)(2).[4] Accordingly, we reverse the Tax Court on this issue and hold that the portion of the Robinsons' settlement proceeds allocable to punitive damages are not excludable under Section 104(a)(2).

Because the proceeds allocable to punitive damages are not excludable, the Robinsons must include the 24.241% of $4,788,511.72, the net settlement payment (less prejudgment interest),[5] as well as 24.241% of the $691,972.43 discharge of indebtedness. However, because the parties agreed that the Robinsons were allowed to deduct the non-excludable portions of part of the discharged indebtedness, namely the $55,337.44 in interest and $57,875.91 in attorney fees, the Robinsons should be allowed to deduct an additional 24.241% of these amounts.

---

[3]26 U.S.C. § 104(a)(2).

[4]*Estate of Moore v. Commissioner,* 53 F.2d 712, 716 (5th Cir.1995).

[5]The Tax Court held that 100% of the prejudgment interest was included in income. The Robinsons did not appeal this holding.

III.

THE ROBINSONS' CROSS-APPEAL

A.

THE ALLOCATION OF THE SETTLEMENT PROCEEDS

The Robinsons contend that the Tax Court erred in reallocating the settlement proceeds among the various types of damages that they suffered. They argue that the Tax Court failed to give "proper regard" to the state court trial judge's allocation of ninety-five percent of the settlement proceeds to mental anguish and five percent to lost profits.

Although the Tax Court is not bound by a state court's allocation of settlement proceeds, it must give "proper regard" to allocations made by state courts when such allocations are entered by the court in a bona fide adversary proceeding.[6] In the case at bar, however, the Tax Court found that the allocation was not entered in a bona fide adversary proceeding. Further, it found that the state trial court simply "rubber stamped" a judgment drafted by the Robinsons' attorneys. Therefore, the Tax Court did not consider itself bound by the state court's allocation, and reallocated the settlement proceeds.

The Tax Court's findings that the allocation was not entered into in an adversary proceeding and that the judgment was simply "rubber stamped" by the state court are findings of fact, which

---

[6]*Cf. Commissioner of Internal Revenue v. Estate of Bosch,* 387 U.S. 456, 463-64, 87 S.Ct. 1776, 1781-82, 18 L.Ed.2d 886 (1967) (quoting S. REPT. NO. 1013, 80th Cong., 2d Sess., pt. 2, at 4 (1948)).

this Court will only disturb upon a finding of clear error.[7]  We hold that the trial court did not err in its factual findings.  The testimony of the attorneys who represented the Robinsons in their suit against the bank supports the Tax Court's finding that the bank allowed the Robinsons to allocate the settlement proceeds in any manner they wished.[8]  This testimony alone supports a finding that the Robinsons and the bank were not adversarial in the allocation of the settlement proceeds.  The circumstances surrounding the state court judge's entry of judgment also support the trial court's findings.  The parties presented the final judgment to the trial judge at his home in the evening.  The meeting at the judge's home lasted no longer than one hour, and neither the final judgment nor the settlement agreement were discussed in detail during that meeting.  Therefore, the Tax Court did not err in failing to give proper regard to the state court judgment's allocation of settlement proceeds.

The Tax Court also did not err in its allocation of the

---

[7]*Switzer v. Wal-Mart Stores, Inc.,* 52 F.3d 1294, 1298 (5th Cir.1995).

[8]The Robinsons' lead counsel testified as follows:

> I asked [the Bank's counsel], would there be any objection on their part on how [a settlement] would be structured if we went in and set the [judgment based on the jury verdict] aside.  He said, "None."
>
> He said, "We don't care how you do it, just so it is paid and we can get it over with, and we will cooperate with you in any way you see fit.  If you can get any tax benefit, fine."  If you-you know, he didn't have any ax to grind.  He didn't care.  He made it plain.

proceeds.  Its allocation was based upon the jury verdict, the best indication of the worth of the Robinsons' claims.  We therefore affirm the Tax Court's reallocation.

B.

## REFUSAL TO SUBPOENA THE STATE COURT JUDGE

The Robinsons contend that the Tax Court erred in refusing to allow them to subpoena the state court judge to testify as to his understanding and knowledge of the final judgment and what went into its determination.  The Robinsons served a subpoena on the state court judge, who in turn moved to quash the subpoena on the ground that the taxpayers sought to question him regarding the mental processes employed by him in entering the Final Judgment.  The Tax Court quashed the subpoena.  We review the Tax Court's quashing of a subpoena for abuse of discretion.[9]

A judge may not be asked to testify about his mental processes in reaching a judicial opinion.[10]  The sole reason that the Robinsons attempted to subpoena the state court judge was to show that he considered the merits of the allocation contained in the Final Judgment rather than simply rubber stamping a judgment drafted by the Robinsons.  There is no way that the trial judge could be asked about such matters without inquiring into his mental processes.  In fact, the whole purpose of the subpoena was to delve

---

[9]*Tiberi v. CIGNA Ins. Co.,* 40 F.3d 110, 112 (5th Cir.1994).

[10]*Washington v. Strickland,* 693 F.2d 1243, 1263 (5th Cir.1982), *rev'd on other grounds,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  *See United States v. Morgan,* 313 U.S. 409, 421-22, 61 S.Ct. 999, 1004-05, 85 L.Ed. 1429 (1941).

into the judge's mental processes. Therefore, we hold that the Tax Court did not err in quashing the subpoena.

## C.

### REFUSAL TO REOPEN THE RECORD

The Robinsons contend that the Tax Court erred in refusing to reopen the record to allow them to present evidence of deductions that offset the discharge-of-indebtedness income. When the evidence revealed that the Robinsons received a release of a $691,971 judgment that the bank held against Taxpayers, the Tax Court allowed the Commissioner to amend its pleading to assert the additional discharge-of-indebtedness income. The Robinsons then moved that the record be left open for additional submissions on the issue. The Tax Court denied the motion, and later denied a motion made by the Robinsons to reopen the record for submission of evidence of offsetting deductions.

The Tax Court's denial of a motion to reopen the record for admission of additional evidence is "not subject to review except upon a demonstration of extraordinary circumstances which reveal a clear abuse of discretion."[11] Further, such motions should be denied where the evidence to be presented was available at trial, or could have been obtained with reasonable diligence.[12]

We hold that the Tax Court did not err in denying the motion to reopen because, through the exercise of reasonable diligence,

---

[11]*Devore v. Commissioner,* 963 F.2d 280, 282 (9th Cir.1992).

[12]*See, e.g., Tweeddale v. Commissioner,* 841 F.2d 643, 646 (5th Cir.1988).

the Robinsons could have obtained the evidence of offsetting deductions. The Robinsons were made aware—through both the Commissioner's interrogatories propounded to them during discovery and through the evidence obtained during the depositions of the attorneys that represented the Robinsons in the state court litigation—that discharge-of-indebtedness income was an issue in the case. Therefore, they should have obtained evidence of offsetting deductions before the close of trial.

IV.

CONCLUSION

We REVERSE the Tax Court's judgment to the extent that it held that the punitive damages portion of the settlement proceeds were excludable under Section 104(a)(2), REMAND this case to the Tax Court for entry of a judgment in accordance with this opinion, and AFFIRM the remainder of the Tax Court's opinion.