Robert PEACO and Mildred Peaco, Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE.

No. 00–2154.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Sept. 23, 2002.

Decided Sept. 27, 2002.

**424**

Before BARRY, AMBRO, and COWEN, Circuit Judges.

## OPINION

BARRY, Circuit Judge.

Appellants Robert and Mildred Peaco filed a petition in the United States Tax Court for a redetermination of a $218,903 tax deficiency assessed by the Internal Revenue Service ("IRS") for the 1995 calendar year. The deficiency was based on appellants' failure to report $584,000 in income on their 1995 joint tax return. Mrs. Peaco received the sum in settlement of her age discrimination and retaliation claims against her employer, Chester County Intermediate Unit 24 ("CCIU"), under the Age Discrimination in Employment Act ("ADEA") and Pennsylvania Human Relations Act ("PHRA"). Of the total, $84,000 represented attorney's fees and costs. After conducting a non-jury trial, the Tax Court entered a decision permitting appellants to exclude the award of attorney's fees from gross income but requiring them to report the remainder. The Court accordingly reduced the tax deficiency to $168,601. Mr. and Mrs. Peaco appealed. We have jurisdiction pursuant to 26 U.S.C. § 7482 and will affirm.

The question presented is whether Mrs. Peaco's settlement payment[1] is excludable from gross income under 26 U.S.C. § 104(a)(2) as damages received "on account of personal injuries or sickness."[2] It is not. The United States Supreme Court has definitively ruled that damages awarded under the ADEA, whether in the form of back pay or liquidated damages, are not the result of personal injury and must be included in gross income. *Commissioner v. Schleier*, 515 U.S. 323, 330–31, 332, 115 S.Ct. 2159, 132 L.Ed.2d 294 (1995).

Appellants launch a variety of attacks on this simple and very clear conclusion. First, they argue that *Schleier* is inapplicable because the settlement agreement was executed before the decision was filed and payment was received on the same day the decision was filed. These facts are irrelevant. Taxes for the 1995 calendar year were not due until April 15, 1996, and appellants filed their joint income tax return on April 11, 1996. At the time the return was filed, Schleier had been in existence ten months. Appellants (and their professional tax accountants) clearly had advanced knowledge of and an obligation to follow Schleier.

Next, appellants attempt to avoid *Schleier*'s effect by asserting that they reasonably and detrimentally relied on IRS Revenue Ruling 93–88, which held that compensatory damages, including back pay, received in satisfaction of gender, race, or disability discrimination claims were excludable from gross income. This assertion also fails. The IRS suspended Revenue Ruling 93–88 by notice released August 3, 1995, many months be-

---

**1.** The parties do not contest the exclusion of $84,000 in attorney's fees from gross income, only the inclusion of $500,000.

**2.** Section 104 was amended in 1996 by the Small Business Job Protection Act. Those amendments are inapplicable here. Accordingly, all citations to the Internal Revenue Code are from the United States Code, 1994 edition.

fore appellants filed their tax return. Moreover, the IRS's interpretive rulings may not be used to overturn the plain language of a statute. *Schleier*, 515 U.S. at 336 n. 8 (citations omitted). Any reliance on Revenue Ruling 93–88 was, therefore, misplaced.

Appellants also cite Revenue Ruling 96–65 as authority for the proposition that *Schleier* is inapplicable to damage awards received on or before June 14, 1995, the decision's filing date. Although appellants correctly observe that Revenue Ruling 96–65 provides that it will not apply to damages received or settlements brokered on or before June 14, 1995, the ruling does not state that Schleier will not apply to these awards. More importantly, Revenue Ruling 96–65 was published more than eight months after appellants filed their 1995 tax return.[3] The ruling could not, therefore, have been a factor in appellants' decision to exclude the settlement amount from their gross income.

Even accepting that Schleier applies, Mr. and Mrs. Peaco maintain that the settlement proceeds were excludable from gross income because they were intended to compensate Mrs. Peaco for her pain and suffering under the PHRA and not for lost wages and benefits under the ADEA. The Tax Court found otherwise, concluding that the "realities of the settlement" reflected that CCIU paid the $500,000 to satisfy Mrs. Peaco's loss of compensation claim. We review the Tax Court's factual finding for clear error. *Francisco v. United States*, 267 F.3d 303, 321 (3d Cir.2001). No such error occurred here.

In her complaints filed with the Pennsylvania Human Relations Commission and the Equal Employment Opportunity Commission, Mrs. Peaco alleged that CCIU fired her and refused to give her vacation credit because she was then 54 years old. The EEOC issued a letter determining that CCIU had violated the ADEA by firing Mrs. Peaco and had engaged in retaliation. After receiving the EEOC letter, Mrs. Peaco filed an action in federal court seeking damages, which included "back pay, front pay, benefits, pension benefits, attorney's fees, costs of this suit, compensatory damages, liquidated damages, punitive damages, interest and all other legal and equitable relief to which she is entitled for the denial of equal employment opportunity." App. at 215–16. Such "other" relief included damages for emotional distress under the PHRA. Mrs. Peaco's trial demand was $1.2 million; however, the parties eventually settled for $500,000. The settlement confirmation letter indicates that the $500,000 was paid "to fully and finally settle all claims of Mrs. Peaco." App. at 310. Based on these facts, the Tax Court was not clearly erroneous in concluding that the primary and overarching purpose of Mrs. Peaco's lawsuit was to recover lost wages and benefits caused by her termination and that the $500,000 was paid to do just that.

Appellants counter that the settlement agreement expressly allocated all damages to pain and suffering and, thus, the funds qualify for § 104(a)(2)'s exception. The Tax Court acknowledged the agreement's explicit allocation but found that it did not reflect the realities of the settlement given the nature of the lawsuit and the parties' intent. The Court did not err by looking beyond the face of the agreement. "It is ... well established that in cases in which the settlement agreement's allocation of damages does not reflect the true nature of the underlying award, the District Court [or in this case the Tax Court] has a duty to look behind the agreement of the parties to discern the true nature of the 'pay-

---

**3.** Revenue Ruling 96–65 was published on December 30, 1996.

or's intent' in settling claims." *Francisco*, 267 F.3d at 322. This is particularly so where the allocation of damages within the settlement agreement is "driven by tax considerations and [does] not reflect the true value of settled claims." *Id.* (citing *Robinson v. Commissioner*, 70 F.3d 34, 37–38 (5th Cir.1995)).

The Tax Court did not err in determining that the allocation here was influenced more by tax considerations than the merits of the lawsuit. In a letter dated March 27, 1995, to CCIU's executive director, CCIU's attorney estimated CCIU's liability to Mrs. Peaco at $100,000 of back pay including benefits and $400,000 of front pay excluding benefits and salary increases. The attorney further noted the potential for pain and suffering, punitive, and double damages. Shortly thereafter, the parties agreed to settle for $500,000. Instead of allocating the sum to back pay and front pay, however, the parties, at Mrs. Peaco's insistence, allocated the entire amount to pain and suffering. A major factor for doing so was the ability to avoid federal income taxes on the money under 104(a)(2); indeed, at trial Mrs. Peaco was going only for the whole $500,000 as personal injury and not any portion thereof and fought to keep Exhib-

its 22R and 23R out of evidence. These circumstances sufficiently support the Tax Court's conclusion that, despite the settlement agreement's terms, CCIU paid Mrs. Peaco the $500,000 as compensation for lost wages and benefits.[4]

Last, appellants contend that the Tax Court incorrectly applied a "facts and circumstances" rather than a "cause and effect" approach to analyze their petition. This argument is wholly unavailing. There is no indication whatsoever in the record that the Tax Court applied a "facts and circumstances" approach. As stated above, the Tax Court reasonably concluded that CCIU paid Mrs. Peaco the $500,000 to compensate her for lost wages caused by her wrongful termination. There was no need, therefore, for the Court to address whether Mrs. Peaco incurred damages on account of personal injury, i.e., emotional distress.[5]

For the foregoing reasons, we will affirm the decision of the Tax Court.

---

4. Because we find the Tax Court reasonably determined that the settlement payment consisted of front and back pay, we need not address whether the PHRA provides tort–like remedies that are excludable under *Schleier* and Revenue Ruling 96–65.

5. The Tax Court correctly observed that Mrs. Peaco did not allege any facts relating to personal injury in her complaint for age discrimination. Mrs. Peaco argues before us,

however, that she experienced insomnia, nausea, vomiting, diarrhea, hair loss, and chest pains on account of her termination. She also asserts that she was humiliated by a newspaper article, which analogized CCIU's downsizing to pruning dead branches from a tree. Not a single one of these allegations appeared in her complaint, further undermining her contention that the $500,000 was paid to compensate her for physical injuries.