Christopher J. MCCANN; Vickilynn M. McCann, Petitioners—Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent—Appellee.

No. 03–60510.
Summary Calendar

United States Court of Appeals, Fifth Circuit.

Feb. 11, 2004.

Christopher J. McCann, pro se, Vicki-lynn M. McCann, pro se, Slidell, LA, for Petitioner–Appellant.

Bruce Raleigh Ellisen, Kenneth W. Rosenberg, Charles Casazza, B. John Williams, Jr., Eileen J. O'Connor, Assistant Attorney General, Francis Leroy Cramer, Washington, DC, for Respondent–Appellee.

Before KING, Chief Judge, and DAVIS and PRADO, Circuit Judges.

PER CURIAM.*

Petitioners–Appellants Christopher McCann and Vickilynn McCann appeal from a decision of the United States Tax Court, which upheld the Commissioner's determination that they owed $83,667 in unpaid Federal income taxes for the 1994 tax year. For the following reasons, we AFFIRM.

## I. BACKGROUND

In 1985, the McCanns filed a medical malpractice lawsuit against Pendleton Memorial Methodist Hospital in Louisiana state court. Although the McCanns settled their claim against the hospital in April 1992, they proceeded to trial against the Louisiana Patient's Compensation Fund (LPCF). In Louisiana, the medical malpractice liability of a health care provider is limited to $100,000, LA.REV.STAT. ANN. § 40:1299.42 B(2) (West 2001), but— to the extent that a medical malpractice judgment or settlement exceeds "the total liability of all liable health care providers"—the LPCF is responsible for paying the remainder of the judgment or settlement, up to a statutory maximum of $500,000 plus interests and continuing health care costs. *Id.* § 1299:42 B(1), (3). After a trial and jury verdict, which awarded the McCanns $500,000 in damages, the state court entered judgment against LPCF in the amount of $400,000 "plus all legal interest from the date of judicial demand."[1]

On March 25, 1993, the McCanns filed a motion to fix interests and costs. In their motion, the McCanns itemized the total interest that had accrued from the date they filed their complaint; as of March 24, 1993, they claimed that the total interest owed was $407,323.31 and additional interest was accruing at a rate of $76.72 per day. The state court agreed, granted the motion for the interest and per diem rate requested by the McCanns, and held that the LPCF was also responsible for $8,588.05 in litigation costs. The LPCF appealed to the Louisiana Court of Appeals, which affirmed the judgment of the trial court.

In August 1994, the parties agreed to settle the case and the LPCF issued a $839,000 check to the McCanns. On the check stub, the payment was divided into two amounts, each followed by a numerical code: these codes indicated that $400,000

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1. The state court found that the LPCF was entitled to a $100,000 credit because the McCanns had settled their claim against Pendleton Memorial Methodist Hospital.

of the payment was for general damages while $439,000 was payment for interest. A week later, the McCanns filed a "Release and Satisfaction of Judgment" in the state trial court, in which they declared

> that the Judgment of the Civil District Court for the Parish of Orleans, State of Louisiana ... in the amount of FOUR HUNDRED THOUSAND AND NO/100 DOLLARS ($400,000.00) plus legal interest from the date of judicial demand plus costs in the amount of EIGHT THOUSAND FIVE HUNDRED EIGHTY–EIGHT AND 05/100 DOLLARS ($8588.05), in favor of Christopher J. McCann, III and Vickilynn M. McCann and against the Louisiana Patient's Compensation Fund has been paid in full. . . .

The parties also memorialized the settlement agreement in a document entitled "Receipt, Release and Compromise Agreement With Indemnity" (the "RRC Agreement"). Under this agreement, the LPCF stated that it had "pa[id] the sum of EIGHT HUNDRED THIRTY–NINE AND NO/100 DOLLARS [sic] ($839,-000.00) to the McCanns" in consideration for the McCann's agreement to release the LCPF from all present and future liability arising out of the medical malpractice lawsuit.

The McCanns did not report any portion of the $839,000 settlement as income in their 1994 federal income tax return. After an audit, Defendant–Appellee, the Commissioner of the Internal Revenue Service, concluded that only $400,000 of the settlement was for personal injury damages and excludable from the McCann's gross income under I.R.C. § 104(a)(2) (1994). The remaining $439,000, however, the Commissioner de-

termined to be interest, which must be included as income under I.R.C. § 61(a)(4) (1994). The Commissioner reduced the $439,000 sum to account for the pro rata portion of the McCanns' attorneys fees and costs that they paid out of the interest income and concluded that they had failed to report a taxable interest income of $256,625. Accordingly, on October 5, 2000, the Commissioner issued a notice of deficiency stating that the McCanns owed $83,922 in unpaid taxes.[2]

The McCanns responded by petitioning the tax court for a redetermination of the deficiency. They argued that the entire $839,000 settlement payment was excludable from their income as personal injury damages because no portion of this payment was identified in the settlement as interest. The tax court disagreed, and it held that because Louisiana law limits the LPCF's liability for compensatory damages to $400,000, the portion of the settlement in excess of $400,000 must have been payment for interest. Therefore, on February 14, 2003, the tax court issued an opinion upholding the Commissioner's deficiency determination. On April 17, 2003, the McCanns moved the tax court either to vacate its decision or to reconsider its opinion. Attached to this motion, the McCanns submitted a sworn affidavit from their former medical malpractice attorney, in which he stated that the LPCF agreed to pay a lump-sum settlement that was not allocated between damages and interest. The tax court issued a brief order denying both motions on June 9, 2003.

## II. DISCUSSION

The McCanns present two main contentions on appeal. First, they assert that

---

2. Before the tax court, the Commissioner conceded that the amount of taxable interest should be reduced by $642. It later recalcu-  lated the McCanns' 1994 tax deficiency at $83,667.

the tax court improperly allocated a portion of their lump-sum settlement agreement to taxable interest income and instead should have treated the entire amount as non-taxable compensation for physical injuries under I.R.C. § 104(a). Second, they argue that the tax court erred by not granting their motion to reconsider in light of the additional evidence they submitted with the motion.

## A. Allocation of the Settlement Proceeds

We review tax court decisions under the same standards used to review district court decisions in civil actions. *Houston Oil & Minerals Corp. v. Commissioner*, 922 F.2d 283, 285 (5th Cir.1991); *see also* I.R.C. § 7482(a)(1) (2000). A tax court's allocation of settlement proceeds is a factual determination, which we will disturb only on a finding of clear error. *See Srivastava v. Commissioner*, 220 F.3d 353, 365 (5th Cir.2000).

The McCanns claim that the settlement agreement, which provided that the LPCF would pay $839,000 in consideration for a release of liability, was cast in terms of a single payment and did not allocate the payment between interest and damages. Therefore, under *Robinson v. Commissioner*, 70 F.3d 34 (5th Cir.1995), they claim that the tax court should have given a "proper regard" to this allocation of the proceeds because it was approved by the state trial court. *See id.* at 37 ("Although the Tax Court is not bound by a state court's allocation of settlement proceeds, it must give 'proper regard' to allocations made by state courts when such allocations are entered by the court in a bona fide adversary proceeding.").

The McCanns' reliance on *Robinson* is unavailing. In *Robinson*, the parties drafted a settlement agreement that expressly stated that it was designed to compensate the plaintiffs for their mental an-guish and lost profits, both of which may be excluded from gross income, and that none of the proceeds were attributable to punitive damages, which must be included in gross income. *See id.* at 36. Although the state court entered a final judgment based on this agreement, we held that the tax court's decision to look beyond the wording of the settlement and to reallocate some of the proceeds to taxable punitive damages was not clearly erroneous because, as the tax court noted, it appeared that the trial judge had simply "rubber stamped" the settlement after it was drafted by the plaintiffs' attorneys. *Id.* at 37–38. We also noted that, because the parties entered their settlement agreement following a jury verdict, the tax court could base its allocation of the proceeds on that verdict because it provided "the best indication of the worth of the [plaintiffs'] claims." *Id.* at 38; *see also Srivastava*, 220 F.3d at 365 (noting that the tax treatment of settlements should be determined by asking "in lieu of what was the ... settlement awarded?") (internal quotation marks and citation omitted).

■ *Robinson* does not support the result sought by the McCanns for at least two reasons. First, unlike *Robinson*, the RRC agreement in this case does not expressly state that the LPCF's $839,000 payment was intended to compensate the McCanns only for personal injury damages. Thus, there was no express allocation of the proceeds, upheld by the state court, to which the tax court should have afforded "proper regard." Second, *Robinson* explicitly approves of the method employed by the tax court to allocate the settlement proceeds in this case. The tax court based its allocation—$400,000 to excludable damages and $439,000 to taxable interest—on the jury's verdict. Critically, the jury found that the McCanns were entitled to receive $500,000, the maximum

amount of compensatory damages allowed under Louisiana law; after adjusting this award to reflect that Pendleton Memorial Methodist Hospital was statutorily responsible for the first $100,000 in damages, the state court entered judgment against the LPCF in the amount of $400,000 in damages plus interest and costs. Therefore, it was not clearly erroneous for the tax court to agree with the Commissioner's determination that, to the extent that the settlement exceeded $400,000, the payment was attributable to interest and costs. *Cf. Rozpad v. Commissioner*, 154 F.3d 1, 3–4 (1st Cir.1998) (holding that—"when there has been a jury verdict and an ensuing judgment that contains separate itemizations of damages and interest—a subsequent settlement that does not purport to make a different allocation is quite logically viewed as including a pro rata share of interest").

The McCanns further claim that the tax court improperly relied on the numerical coding on the LPCF settlement check, which identified $400,000 of the settlement payment as damages and $439,000 of the payment as interest, when it upheld the Commissioner's allocation. They claim that this result allows the LPCF to alter the terms of the lump-sum settlement agreement "unilateraly." We disagree. As we stated in *Srivastava*, it is "the payor's intent, rather than the payee's, that carries the most weight" in the allocation of settlement proceeds for tax purposes. 220 F.3d at 365–66. If the LPCF intended, as the check stub suggests, that a portion of its payment remunerate the McCanns for the interest that they would have had to pay on the court's judgment,

this evidence was properly considered by the tax court. Moreover, because Louisiana law limits the damages liability of the LPCF to $400,000, the tax court's decision to uphold the Commissioner's allocation of the remaining $439,000 to interest and costs was not clearly erroneous.[3]

## B. Motion to Reconsider

We review the tax court's denial of a motion to vacate and to reconsider its judgment for an abuse of discretion. *See Tweeddale v. Commissioner*, 841 F.2d 643, 646 (5th Cir.1988); *Drobny v. Commissioner*, 113 F.3d 670, 676 (7th Cir.1997). In their motion, the McCanns argued that the tax court should reconsider its decision based on additional evidence that they claimed demonstrated that the LPCF did not contemplate allocating any of the lump-sum settlement payment to interest during the settlement negotiations. But, because the affidavit on which the McCanns relied was available before trial, the McCanns could have presented this evidence before the tax court rendered its decision. Therefore, we conclude that the tax court did not abuse its discretion by denying the McCanns' motion. *See Tweeddale*, 841 F.2d at 646; *cf. Robinson*, 70 F.3d at 39 ("[S]uch motions should be denied where the evidence to be presented was available at trial, or could have been obtained with reasonable diligence.").

## III. CONCLUSION

Accordingly, we affirm the judgment of the tax court.

---

3. The McCanns' suggestion that the LPCF intended to pay more than $400,000 in compensatory damages to settle this case, out of a fear that the statutory cap on damages would be deemed unconstitutional, is similarly unavailing. In 1989, approximately five years before these settlement negotiations took place, the Louisiana Supreme Court expressly held that the $400,000 limit on the LPCF's liability was not constitutionally infirm. *Williams v. Kushner*, 549 So.2d 294, 296 (La. 1989).