T.C. Memo. 2008-86

UNITED STATES TAX COURT

GODFREY L.C. PHELPS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 20569-05.                    Filed April 7, 2008.

Godfrey L.C. Phelps, pro se.

<u>Michael T. Sargent</u>, for respondent.

MEMORANDUM OPINION

CHIECHI, <u>Judge</u>:  This case is before the Court on respon-
dent's motion for partial summary judgment.[1]  We shall grant

---

[1]Respondent filed a memorandum of law (respondent's memoran-
dum of law) in support of respondent's motion for partial summary
judgment and a declaration (respondent's declaration) in support
of that motion.  We shall refer collectively to respondent's
motion for partial summary judgment, respondent's memorandum of
(continued...)

respondent's motion.

## Background

The record establishes and/or the parties do not dispute the following.

At the time petitioner filed the petition in this case, his mailing address was in Arnold, Maryland.

On February 10, 1999, petitioner filed a complaint with the Office of Federal Contract Compliance Programs in which he alleged that Schneider National Carriers, Inc. (Schneider), was a Federal contractor which engaged in discriminatory work practices. On October 4, 1999, that complaint was dismissed on the ground that Schneider was not a Federal contractor under 41 C.F.R. sec. 60-1.40 (2007).

Around September 2, 1999, petitioner submitted to Schneider an application for employment (petitioner's employment application). Schneider denied that application.

Around February 17, 2000, petitioner filed charges against Schneider with the Equal Employment Opportunity Commission and the Wisconsin Department of Workforce Development. Petitioner alleged in those charges (1) that Schneider discriminated against

---

[1](...continued)
law, and respondent's declaration as respondent's motion.

In respondent's motion, respondent concedes for purposes of that motion only the addition to tax under sec. 6651(a)(1) that respondent determined in the notice of deficiency with respect to petitioner's taxable year 2001.

him on the basis of his age, (2) that Schneider's "pre-employment screening procedures and inquiries as to a potential employee's felony convictions have a discriminatory impact on African-American men", and (3) that Schneider engaged in unlawful retaliation. (We shall refer to the foregoing charges that petitioner filed against Schneider as petitioner's claims against Schneider.)

Petitioner and Schneider entered into an agreement, effective as of September 29, 2001, that was entitled "**RELEASE AND SETTLEMENT AGREEMENT**" (settlement agreement). That agreement provided in pertinent part:

> **THIS RELEASE AND SETTLEMENT AGREEMENT** (the "Agreement") is made by and between Godfrey L.C. Phelps ("Mr. Phelps") and Schneider National Carriers, Inc. (the "Company"), and, as set forth in Section 9 below, takes effect on the eighth day after the date Mr. Phelps signs this Agreement for delivery to the Company (the "Effective Date of this Agreement").
>
> #### Recitals
>
> A.   Mr. Phelps submitted an application for employment with the Company on or about September 2, 1999.
>
> B.   On February 10, 1999, Mr. Phelps filed a complaint with the Office of Federal Contract Compliance Programs in which he alleged that the Company was a federal contractor who engaged in discriminatory work practices (the "OFFCP [sic] Complaint"). This complaint was dismissed on October 4, 1999 because the Company was not found to be a federal contractor as defined under 41 CFR 60-1.40.
>
> C.   On or about February 17, 2000, Mr. Phelps filed Charge No. 260-A0-0330 against the Company with the Equal Employment Opportunity Commission ("EEOC Charge") and the Wisconsin Department of Workforce

Development.  Mr. Phelps' Charges complained that the Company discriminated against him on the basis of age and because the Company's pre-employment screening procedures and inquiries as to a potential employee's felony convictions have a discriminatory impact on African-American men, as well as unlawful retaliation.

D.  The Company denies any liability to Mr. Phelps, whether based on any claims referred to above or for any other reason, including violation of Title VII of the Civil Rights Act of 1964 and/or any other federal, state, or local laws, regulations, and/or ordinances of any kind.

E.  Mr. Phelps and the Company have determined that it would be in their mutual best interests to settle and resolve the EEOC Charge and any and all other potential or actual disagreements and controversies between them, and both Mr. Phelps and the Company desire to settle and resolve the same in accordance with the terms and conditions of this Agreement.

**THEREFORE,** in consideration of the mutual covenants and conditions of this Agreement, including Recitals A through E above and Sections 1 through 13 below, Mr. Phelps and the Company hereby agree as follows:

1.  **Payment to be Made by the Company.**  Within seven business days after the Effective Date of this Agreement, the Company will pay Mr. Phelps the sum of $20,000 as non-wage damages recoverable under the FLSA, ADEA and Title VII.  The Company will file a Form 1099 with the IRS and Mr. Phelps shall be responsible for payment of any taxes due or penalties, and related costs. * * *

    *       *       *       *       *       *       *

2.  **Release of the Company.**  In consideration of the payment to be made in accordance with Section 1, Mr. Phelps hereby fully and forever releases, acquits, and discharges the Company from any and all liability, accrued or unaccrued, known or unknown, asserted or unasserted, on account of any and all debts, claims, suits, demands, causes of action, or controversies of any nature for all injuries, losses, and damages (including, but not

limited to, punitive damages), whether at law or in equity, contract or tort, or whether judicial or administrative in nature, that he has or may have against the Company as of the date of his execution of this Agreement, excepting only his rights under this Agreement. Subject to that exception, the release in the previous sentence includes, but is not necessarily limited to:

a.  Any and all liability of the Company resulting from, arising out of, or connected with Mr. Phelps' application for employment with the Company or the Company's decision not to hire Mr. Phelps;

b.  Any and all liability of the Company resulting from, arising out of, or connected with rights or claims arising under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, the Age Discrimination in Employment Act, the Americans with Disabilities Act, the Rehabilitation Act of 1973, the National Labor Relations Act, the Maryland Fair Employment Practices Act, the Wisconsin Fair Employment Act, and any other federal, state, or local laws, regulations, ordinances of any kind, and the common law;

c.  Any and all liability of the Company resulting from, arising out of, or connected with the OFCCP Complaint referred to in Recital B and the EEOC Charge referred to in Recital C;

\*       \*       \*       \*       \*       \*       \*

3.  **Release of Mr. Phelps.**  In consideration of the mutual covenants of this Agreement, the Company hereby releases Mr. Phelps from any and all liability on account of any and all debts, claims, suits, demands, causes of action, or controversies of any nature for all injuries, losses, and damages (including, but not limited to, punitive damages), whether at law or in equity, contract or tort, or whether judicial or administrative in nature, that the Company has or may have against Mr. Phelps as of the date this Agreement is signed on behalf of the Company, excepting only any liability incurred by the Company because of the

failure or refusal of Mr. Phelps to perform any of his obligations under this Agreement; and

4.  **Withdrawal of the Complaint; Covenant Not to sue on Released Claims.**  At the time of his execution and delivery of this Release and Settlement Agreement, Mr. Phelps agrees to request the dismissal of the Charges referred to in Recital C by signing and mailing to the Company's attorney, Steven B. Rynecki, at 411 E. Wisconsin Avenue, Suite 700, Milwaukee, Wisconsin 53201, a Request for Withdrawal of Complaint in the form attached to this Agreement * * *.  Mr. Phelps agrees and promises to sign any other documents and to take any other actions that may be necessary or desirable to obtain the dismissal of the Charges as required.  In consideration of the actions to be taken by the Company in accordance with Section 1 above, Mr. Phelps agrees and promises not to commence or continue any legal, administrative, or other proceedings of any nature against the Company based on any debts, claims, demands, causes of action, or controversies released in this Agreement.

    *       *       *       *       *       *       *

6.  **Denial of Liability.**  In entering into this Agreement, the Company does not admit any liability to Mr. Phelps of any nature or for any reason or the violation of any law or regulation, any such liability or violation being hereby expressly denied, including, but not limited to, any violation of or liability under any of the statutes and claims referred to in Section 2.

7.  **Parties Benefited and Bound; Real Party in Interest.**  This Agreement is binding upon and inures to the benefit of the Company and Mr. Phelps and their respective heirs, representatives, successors, beneficiaries, and assigns. Mr. Phelps represents that he is the real party in interest with respect to all claims released in this Agreement and that he has not assigned to any other person any claim that could be asserted against the Company.

    *       *       *       *       *       *       *

9. **Older Workers Benefit Protection Act.** This Agreement is governed by the Older Workers Benefit Protection Act. Under that Act, Mr. Phelps has at least 21 days after being given this Agreement during which he may consider whether or not to sign this Agreement. Further, in compliance with that Act, Mr. Phelps has seven days following his signing of this Agreement during which he may revoke this Agreement. Therefore, the "Effective Date of this Agreement" is defined as the eighth day after the date Mr. Phelps signs this Agreement for delivery to the Company, and this Agreement will not be effective or enforceable until such Effective Date. However, the release in Section 2 does not apply to any rights or claims that may arise after the date Mr. Phelps signs this Agreement. Further, if Mr. Phelps revokes this Agreement during the seven-day period referred to above, the Company will not have any obligation to him under this Agreement.

10. **Advice to Consult Legal Counsel.** Since this Agreement includes a waiver of Mr. Phelps' rights to pursue recovery of damages against the Company under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, and the other statutes and claims referred to in Section 2 and a release of any and all liability of the Company to Mr. Phelps is based on all such statutes and claims, Mr. Phelps is hereby advised to consult an attorney before signing this Agreement, and, by signing the Agreement, acknowledges that he has done so.

11. **Entire Agreement.** This Agreement constitutes the entire agreement for the settlement of the matters mentioned herein and supersedes all prior corre-spondence, discussions, and understandings for the settlement of such matters.

 *     *     *     *     *     *     *

13. **Acknowledgment.** In signing this Agreement, Mr. Phelps acknowledges and agrees:

    a.  That he has been given at least 21 days to read this Agreement, to discuss the terms and

conditions of the Agreement with his attorney and any other advisers of his choice, and to consider whether or not to sign the Agreement;

b. That he has read this Agreement and fully understands the terms and conditions of the Agreement, which are contractual and not a mere recital;

c. That he has not relied on any statement or representation made by or on behalf of the Company other than as set forth in this Agreement, but wholly upon his own judgment, belief, and knowledge and the advice of any advisers of his choice; and

d. That he is voluntarily signing this Agreement with full knowledge as to its meaning and consequences and accepting the consideration to be provided under the Agreement for the purpose of making a full and final compromise, adjustment, and settlement of all the matters mentioned above.

Pursuant to the settlement agreement, Schneider paid $20,000 (settlement proceeds) to petitioner in 2001. Pursuant to that agreement, Schneider submitted to the Internal Revenue Service Form 1099-MISC, Miscellaneous Income (Form 1099-MISC). That form showed that Schneider paid $20,000 to petitioner in 2001.[2]

On May 1, 2002, petitioner electronically filed Form 1040, U.S. Individual Income Tax Return (petitioner's 2001 return), for

---

[2]The Court takes judicial notice that the instructions for Form 1099-MISC provide, inter alia, that the following items are to be reported in that form as "Other income": "Generally, * * * any damages for nonphysical injuries or sickness, and any other taxable damages." Those instructions further provide in pertinent part: "Generally, report all **compensatory damages** for nonphysical injuries or sickness, such as employment discrimination or defamation."

his taxable year 2001.  Petitioner included Schedule C, Profit or Loss From Business (petitioner's 2001 Schedule C), as part of that return.  In that schedule, petitioner described his business as "SETTLEMENT TITLE VII".

In petitioner's 2001 Schedule C, petitioner reported $20,000 of other income and claimed a $20,000 deduction for other expenses.  Petitioner attached Form 8275, Disclosure Statement, to petitioner's 2001 return with respect to that claimed deduction.  That form stated:

> THE TAXPAYER RECEIVED PERSONAL INJURY DAMAGES FORM AN
> EMPLOYMENT DISCRIMINATION SUIT THAT WAS FILED UNDER
> TITLE VII OF THE CIVIL RIGHTS ACT THE SUM OF SAID
> SETTLEMENT ( 20,000) WAS INACCURATELY REPORTED BY THE
> DEFENDANT AS NONEMPLOYEE COMPENSATION ON FORM 1099-MISC
> ACCORDING TO CODE SEC 61, PAR 1624, COMPENSATION FOR
> INJURIES, DAMAGES OR OTHER HARMS, UNDER THIS SECTION,
> ARE NON TAXABLE  [Reproduced literally.]

On August 3, 2005, respondent issued to petitioner a notice of deficiency (notice) with respect to petitioner's taxable year 2001.  In that notice, respondent determined that the settlement proceeds are includible as "Other Income" and are not excludable from gross income.[3]  In the notice, respondent also determined that petitioner is liable for the addition to tax under section

---

[3]In making the determinations with respect to the settlement proceeds, respondent concluded that those proceeds are not includible as income from a trade or business and are not deductible under sec. 162(a).

6651(a)(1).[4]

## Discussion

The Court may grant summary judgment where there is no genuine issue of material fact and a decision may be rendered as a matter of law.  Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994).

In petitioner's response to respondent's motion (petitioner's response), petitioner advances what appear to be three principal arguments in support of his position that the Court should deny that motion.[5]  We turn first to what we understand to be petitioner's argument that the Court should deny respondent's motion because respondent's filing of that motion constitutes fraud on the part of respondent and respondent's representatives, including respondent's counsel of record, and racial discrimination.  In this regard, petitioner argues, inter alia, that

---

[4]All section references are to the Internal Revenue Code in effect for the year at issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

[5]In petitioner's 2001 Schedule C, petitioner described his business as "SETTLEMENT TITLE VII".  In that schedule, petitioner reported $20,000 of other income and claimed a $20,000 deduction for other expenses.  In the notice, respondent determined that the settlement proceeds are not includible as Schedule C income and are not deductible under sec. 162(a).  Petitioner does not dispute (1) that during 2001 he was not engaged in the trade or business shown in petitioner's 2001 Schedule C, (2) that the settlement proceeds are not includible as Schedule C income, and (3) that he is not entitled to deduct those proceeds under sec. 162(a).  Instead, petitioner argues that the settlement proceeds are excludable from gross income under sec. 104(a)(2).

respondent's motion

> cannot be used to circumvent the truth severely limit
> one's case and avoid genuine issued that are in dispute
> that may cause enormous embarrassment to the United
> States Government in its Treatment of Black Americans.

>     *       *       *       *       *       *       *

> * * * in the instant case certain members of the IRS
> have been notoriously treacherous through their fraud
> deceit misrepresentation omissions of material facts,
> indignation, and psychological pressure of intimidation
> * * *  [Reproduced literally.]

We reject petitioner's argument.  Rule 121(a) provides that

"Either party may move, with or without supporting affidavits,

for a summary adjudication in the moving party's favor upon all

or any part of the legal issues in controversy."  Respondent

filed respondent's motion in accordance with that Rule.

We turn now to what we understand to be petitioner's argu-

ment that the Court should deny respondent's motion because the

settlement agreement is illegal.  According to petitioner, the

settlement agreement

> is being challenged due to financial hardship, emo-
> tional stress, psychological trauma and the fraud that
> was perpetrated by Schneider National Carrier Inc and
> the complicity of the United States Government in their
> refusal to enforce the employment laws.

We reject petitioner's argument.  The settlement agreement that

petitioner and Schneider executed provided, inter alia, (1) that

petitioner had been given at least 21 days to read that agreement

and discuss its terms with his attorney and any other advisers of

his choice, (2) that he read that agreement and fully understood

its terms and conditions, and (3) that he voluntarily signed that agreement with full knowledge as to its meaning and consequences.

We turn finally to what we understand to be petitioner's argument that the Court should deny respondent's motion because a trial is necessary to examine the settlement agreement in order to determine whether the settlement proceeds are excludable under section 104(a)(2). Before addressing that argument, we shall summarize certain principles applicable to our determination of whether the settlement proceeds are excludable under that section.

Section 61(a) provides the following sweeping definition of the term "gross income": "Except as otherwise provided in this subtitle, gross income means all income from whatever source derived". Not only is section 61(a) broad in its scope, Commissioner v. Schleier, 515 U.S. 323, 328 (1995), exclusions from gross income must be narrowly construed, id.

Section 104(a)(2) provides that gross income does not include:

> (2) the amount of any damages (other than punitive damages) received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal physical injuries or physical sickness;

The regulations under section 104(a)(2) provide in pertinent part:

> The term "damages received (whether by suit or agreement)" means an amount received (other than workmen's

compensation) through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution.

Sec. 1.104-1(c), Income Tax Regs.

The Supreme Court of the United States (Supreme Court) summarized the requirements of section 104(a)(2) as follows:

> In sum, the plain language of § 104(a)(2), the text of the applicable regulation, and our decision in Burke establish two independent requirements that a taxpayer must meet before a recovery may be excluded under § 104(a)(2). First, the taxpayer must demonstrate that the underlying cause of action giving rise to the recovery is "based upon tort or tort type rights"; and second, the taxpayer must show that the damages were received "on account of personal injuries or sickness." * * *

Commissioner v. Schleier, supra at 336-337.

When the Supreme Court issued its opinion in Commissioner v. Schleier, supra, section 104(a)(2), as in effect for the year at issue in Schleier, required, inter alia, that, in order to be excluded from gross income, an amount of damages had to be received "on account of personal injuries or sickness". After the Supreme Court issued its opinion in Schleier, Congress amended (1996 amendment) section 104(a)(2), effective for amounts received after August 20, 1996, by adding the requirement that, in order to be excluded from gross income, any amount received must be on account of personal injuries that are physical or

sickness that is physical.[6]  Small Business Job Protection Act of 1996, Pub. L. 104-188, sec. 1605, 110 Stat. 1838-1839.  The 1996 amendment does not otherwise change the requirements of section 104(a)(2) or the analysis set forth in Commissioner v. Schleier, supra; it imposes an additional requirement in order for an amount to qualify for exclusion from gross income under that section.

Where damages are received pursuant to a settlement agreement, such as is the case here, the nature of the claim that was the actual basis for settlement controls whether such damages are excludable under section 104(a)(2).  United States v. Burke, 504 U.S. 229, 237 (1992).  The determination of the nature of the claim is factual.  Robinson v. Commissioner, 102 T.C. 116, 126 (1994), affd. in part, revd. in part, and remanded on another issue 70 F.3d 34 (5th Cir. 1995); Seay v. Commissioner, 58 T.C. 32, 37 (1972).  Where there is a settlement agreement, that determination is usually made by reference to it.  See Knuckles v. Commissioner, 349 F.2d 610, 613 (10th Cir. 1965), affg. T.C. Memo. 1964-33; Robinson v. Commissioner, supra at 126.  If the

---

[6]Sec. 104(a) provides that emotional distress is not to be treated as a physical injury or physical sickness for purposes of sec. 104(a)(2), except for damages not in excess of the amount paid for medical care attributable to emotional distress.  In this connection, the legislative history of the 1996 amendment states:  "It is intended that the term emotional distress includes symptoms (e.g., insomnia, headaches, stomach disorders) which may result from such emotional distress."  H. Conf. Rept. 104-737, at 301 n.56 (1996), 1996-3 C.B. 741, 1041 n.56.

settlement agreement lacks express language stating what the amount paid pursuant to that agreement was to settle, the intent of the payor is critical to that determination. Knuckles v. Commissioner, supra at 613; see also Agar v. Commissioner, 290 F.2d 283, 284 (2d Cir. 1961), affg. per curiam T.C. Memo. 1960-21. Although the belief of the payee is relevant to that inquiry, the character of the settlement payment hinges ultimately on the dominant reason of the payor in making the payment. Agar v. Commissioner, supra at 284; Fono v. Commissioner, 79 T.C. 680, 696 (1982), affd. without published opinion 749 F.2d 37 (9th Cir. 1984). Whether the settlement payment is excludable from gross income under section 104(a)(2) depends on the nature and the character of the claim asserted, and not upon the validity of that claim. See Bent v. Commissioner, 87 T.C. 236, 244 (1986), affd. 835 F.2d 67 (3d Cir. 1987); Glynn v. Commissioner, 76 T.C. 116, 119 (1981), affd. without published opinion 676 F.2d 682 (1st Cir. 1982); Seay v. Commissioner, supra at 37.

We now address what we understand to be petitioner's argument that the Court should deny respondent's motion because a trial is necessary. We reject petitioner's argument. In order to determine whether the settlement proceeds are excludable under section 104(a)(2), the Court must, as petitioner acknowledges, examine the settlement agreement. See Knuckles v. Commissioner, supra at 613. Examination of that agreement resolves the issue

presented under that section. We conclude that there is no genuine issue of material fact with respect to our determination of whether the settlement proceeds are excludable under section 104(a)(2).

We consider now whether the $20,000 of settlement proceeds that petitioner received under the settlement agreement are excludable under section 104(a)(2).[7] The settlement agreement provided in pertinent part:

> the Company will pay Mr. Phelps the sum of $20,000 as non-wage damages recoverable under the FLSA [Fair Labor Standards Act], ADEA [Age Discrimination in Employment Act] and Title VII [of the Civil Rights Act]. The Company will file a Form 1099 with the IRS and Mr. Phelps shall be responsible for payment of any taxes due or penalties, and related costs. * * *[8]

The Fair Labor Standards Act of 1938 (FLSA), ch. 676, 52 Stat. 1060 (current version at 29 U.S.C. secs. 201-219 (2000)),

----

[7]In petitioner's claims against Schneider that he filed around Feb. 17, 2000, petitioner alleged that Schneider engaged in age discrimination, racial discrimination, and unlawful retaliation (i.e., discrimination against an individual who has filed a claim alleging unlawful employment practices).

On Feb. 10, 1999, petitioner also filed a complaint with the Office of Federal Contract Compliance Programs in which he alleged that Schneider was a Federal contractor which engaged in discriminatory work practices. That complaint was dismissed on the ground that Schneider was not a Federal contractor under 41 C.F.R. sec. 60-1.40 (2007).

[8]Sec. 2 of the settlement agreement contained boilerplate language releasing Schneider from "any and all liability" with respect to, inter alia, any claims that petitioner may have had against it. We do not attribute any significance to that boilerplate language. See Ndirika v. Commissioner, T.C. Memo. 2004-250.

addresses unpaid minimum wages and unpaid overtime compensation. 29 U.S.C. secs. 206 and 207. The relief available under the FLSA for unpaid minimum wages is damages in the amount of those unpaid wages and an additional equal amount as liquidated damages. Id. sec. 216(b). The relief available under the FLSA for unpaid overtime compensation is damages in the amount of that unpaid compensation and an additional equal amount as liquidated damages. Id.[9] Compensation for personal injuries is not a form of relief under the FLSA.[10]

The Age Discrimination in Employment Act of 1967 (ADEA), Pub. L. 90-202, 81 Stat. 602 (current version at 29 U.S.C. secs. 621-634 (2000)), addresses age discrimination in employment. 29 U.S.C. sec. 623. The relief available under the ADEA is the payment of back wages and liquidated damages that are punitive in nature. Id. sec. 626(b); see also Commissioner v. Schleier, 515 U.S. at 336. The Supreme Court held in Schleier that "recovery under the ADEA is not one that is 'based upon tort or tort type rights.'" Id. The Supreme Court further held in Schleier that "liquidated damages under the ADEA, like back wages under the ADEA, are not received 'on account of personal injury or sickness.'" Id. at 332.

---

[9]See also Jacobs v. Commissioner, T.C. Memo. 2000-59, affd. sub nom. Connelly v. Commissioner, 22 Fed. Appx. 967 (10th Cir. 2001).

[10]See Jacobs v. Commissioner, supra.

Title VII of the Civil Rights Act of 1964 (title VII), Pub. L. 88-352, 78 Stat. 253 (current version at 42 U.S.C. secs. 2000e-2000e-17 (2000)), addresses, inter alia, racial discrimination in employment, 42 U.S.C. secs. 2000e-2 and 2000e-3. The relief available under title VII is injunctions, backpay, and other equitable relief. Id. sec. 2000e-5(g); see also United States v. Burke, 504 U.S. at 238. The Supreme Court held in Burke that title VII does not redress a tort-type personal injury within the meaning of section 104(a)(2) and the applicable regulations. United States v. Burke, supra at 241.

In 1991, Congress enacted the Civil Rights Act of 1991, Pub. L. 102-166, sec. 102, 105 Stat. 1072-1074 (current version at 42 U.S.C. sec. 1981a (2000)), which expanded the relief available in the case of "intentional discrimination" in employment. Under the Civil Rights Act of 1991, a person who is a victim of "intentional discrimination * * * may recover compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses". 42 U.S.C. sec. 1981a(b)(3); see also United States v. Burke, supra at 241 n.12. The Civil Rights Act of 1991 provides that the term "intentional discrimination" does not include "an employment practice that is unlawful because of its disparate impact". 42 U.S.C. sec. 1981a(a)(1). In petitioner's claims against Schneider, petitioner did not refer to

any intentional discrimination on the part of Schneider.  Instead, in those claims, petitioner alleged that Schneider's "pre-employment screening procedures and inquiries as to a potential employee's felony convictions have a discriminatory impact on African-American men".

On the record before us, we find that the settlement proceeds were not received on account of tort-like personal injuries, let alone tort-like personal physical injuries or physical sickness.[11]  On that record, we further find that those proceeds are not excludable under section 104(a)(2) from petitioner's gross income for his taxable year 2001.  On the record before us, we shall grant respondent's motion.

We have considered all of the contentions and arguments of petitioner that are not discussed herein, and we find them to be without merit, irrelevant, and/or moot.

_____

[11]In petitioner's response, petitioner argues that the settlement proceeds were received on account of "emotional distress, indignation and psychological trauma".  We reject that argument.  In any event, we note that emotional distress generally is not to be treated as a physical injury or physical sickness for purposes of sec. 104(a)(2).  See supra note 6.

To reflect the foregoing and respondent's concession,

An order granting respondent's motion and decision will be entered for respondent as to the deficiency and for petitioner as to the addition to tax under section 6651(a)(1).