T.C. Memo. 2005-177

UNITED STATES TAX COURT

ROBERT L. ALLUM, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 2424-03.                    Filed July 20, 2005.

Robert L. Allum, pro se.

Richard D. D'Estrada, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MARVEL, Judge:  Respondent determined a deficiency of

$185,491 in petitioner's Federal income tax for 1999.  The issues

for decision[1] are:  (1) Whether settlement proceeds petitioner

---

[1]Petitioner also raised several constitutional and
jurisdictional issues regarding the validity of this Court and
the Internal Revenue Code in general, including whether this
Court, as an Art. I court exercising jurisdiction over this case,
                                              (continued...)

received may be excluded from his gross income under section 104(a)(2);[2] and (2) if the total settlement proceeds are not excluded under section 104(a)(2), whether a portion of the settlement proceeds that petitioner paid to his attorney as a contingent fee[3] may be excluded from petitioner's gross income.[4]

---

[1](...continued)
violates Amends. V, VI, and VII of the U.S. Constitution. Petitioner's arguments are specious and frivolous, resembling in tone the type of tax-protester arguments with which we are sometimes presented. We shall not address petitioner's "constitutional" arguments "with somber reasoning and copious citation of precedent; to do so might suggest these arguments have some colorable merit." Crain v. Commissioner, 737 F.2d 1417, 1417 (5th Cir. 1984). We simply point out that this Court is a court of law, Freytag v. Commissioner, 501 U.S. 868, 890-891 (1991), with jurisdiction to decide income tax issues of the type raised in this case, secs. 6211-6214, I.R.C. 1986.

[2]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[3]In this case, the attorney's fee was a fixed fee that was contingent upon the successful settlement of petitioner's claims. Although the amount of the fee was not dependent on the amount of the settlement, the fee nevertheless was a contingent fee in that it was payable only if a settlement was successfully negotiated and consummated. See Black's Law Dictionary 338 (8th ed. 2004) (a contingent fee is "A fee charged for a lawyer's services only if the lawsuit is successful or is favorably settled out of court").

[4]Respondent concedes that the $75,000 fee paid to petitioner's attorney is deductible, but only "as a miscellaneous itemized deduction, subject to the restrictions of sections 67 and 68 and, if appropriate, the application of the Alternative Minimum Tax provisions, sections 55 and 56." In his reply brief, petitioner argues for the first time that the attorney's fee is deductible or excludable as a Schedule C, Profit or Loss From Business, expense but did not offer any evidence at trial that
(continued...)

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and supplemental stipulation of facts are incorporated herein by this reference. Petitioner resided in Bozeman, Montana, when his petition in this case was filed.

During the 1980s, petitioner was employed as a Federal Housing Administration (FHA) underwriter with the Valley Mortgage Company (Valley). Valley engaged in an illegal loan scheme, which petitioner reported to both Valley's head underwriter and the FHA. In 1989, Valley terminated petitioner's employment.

In 1991, petitioner brought suit against Valley in the Washoe County District Court of Nevada, alleging wrongful termination, defamation, and violations of Nevada's Racketeer Influenced and Corrupt Organizations Act (RICO). A jury decided against petitioner on the wrongful termination and defamation claims. The Washoe County District Court dismissed the RICO claim, which dismissal the Supreme Court of Nevada affirmed. See Allum v. Valley Bank, 849 P.2d 297 (Nev. 1993).

---

[4](...continued)
the fee was deductible under sec. 162. Moreover, petitioner did not give respondent any notice in his amended petition, his pretrial memorandum, or at trial that he was claiming the fee was deductible under sec. 162. We conclude, therefore, that petitioner did not timely raise the sec. 162 issue, and we decline to decide it. DiLeo v. Commissioner, 96 T.C. 858, 891 (1991), affd. 959 F.2d 16 (2d Cir. 1992); Foil v. Commissioner, 92 T.C. 376, 418 (1989), affd. 920 F.2d 1196 (5th Cir. 1990); Markwardt v. Commissioner, 64 T.C. 989, 997 (1975).

In 1994, petitioner brought suit against Valley's successor, Bank of America (the bank), a Nevada Supreme Court justice who participated in the 1993 decision, and others (together, defendants) in the U.S. District Court for the District of Nevada (District Court) in case No. CV-N-94-455. Petitioner's complaint alleged that the defendants violated his civil rights under 42 U.S.C. sec. 1983 during the State court proceedings and conspired to violate Federal and State RICO statutes.

Petitioner's civil rights complaint in case No. CV-N-94-455 (complaint) consisted of alleged violations of his rights to procedural and substantive due process. Petitioner alleged that his procedural due process rights were violated by certain of the defendants, including the bank, providing financial support to "lawyer politicians" seeking elected judicial office in Nevada, so as to create an

> atmosphere of "obligation" on the part of the lawyer politician who is elected to the position of district court judge or Nevada Supreme Court Justice to facilitate obtaining "legal protection" from said elected lawyer politician * * * for any of the conduct or actions of these Defendants which result in legal action being taken against them.

Petitioner claimed that, as a result of this atmosphere of obligation, his procedural due process rights were further violated through misconduct of the Nevada judiciary that included:

1.  Accepting perjured documents and testimony from the defendants;

2.  denying petitioner a full and fair opportunity to access the discovery process;

3.  generally failing to comply with the Canons of Judicial Conduct;

4.  applying improper standards of adjudication to petitioner's motions and complaints;

5.  fabricating the fact that petitioner "participated in the illegal [RICO] scheme by virtue of his underwriting", see Allum v. Valley Bank, 849 P.2d 297, 301-302 (Nev. 1993); and

6.  advocating on behalf of the defendants. Correspondingly, petitioner claimed that the defendants, in furtherance of Nevada's "'good ole boy network'", violated his substantive due process right by using him as "an example" to promote the protection afforded to the lawyer politicians' contributors and coerce the contributors' employees into submitting to abuse and hostile working conditions.

Petitioner also alleged in his complaint that he suffered unspecified physical and emotional damages as the result of the civil rights violations, and he sought both punitive and compensatory damages.  In regard to his RICO claims, petitioner alleged that he lost income and incurred the costs of prosecuting

and defending various lawsuits with the defendants as a result of their alleged racketeering activities, and he sought treble damages.

The District Court dismissed petitioner's claims of judicial errors in the State court for lack of jurisdiction, granted summary judgment against him on his remaining claims, and denied his discovery-related motions as moot. On March 31, 1998, the Court of Appeals for the Ninth Circuit reversed the District Court's order denying petitioner's discovery motions and that part of the District Court's decision granting summary judgment on petitioner's due process claims, and remanded the case back to the District Court.[5]

In 1999, petitioner filed another suit in the District Court, this time against the State of Nevada, members of the office of the attorney general of the State of Nevada, and a former Nevada Supreme Court justice, alleging violations of his civil rights under 42 U.S.C. sec. 1983 and a conspiracy to

---

[5]In all other respects, the Court of Appeals for the Ninth Circuit affirmed the District Court's decision. In disposing of petitioner's RICO claims, the Court of Appeals for the Ninth Circuit noted that petitioner had alleged that he suffered "emotional and physical distress, lost income and litigation expenses related to prosecuting and defending lawsuits, wrongful termination, libel, and loss of his professional license." The Court of Appeals found, however, that although only the loss of the professional license could constitute injury to "business or property" for purposes of the RICO claims, petitioner had not shown he had been deprived of his professional license, "much less that such deprivation was the result of racketeering activities on the part of the * * * [defendants]".

violate his civil rights in connection with case No. CV-N-94-455. During 1999, petitioner also entered into negotiations to settle case No. CV-N-94-455 with the bank and certain other defendants. Petitioner hired an attorney, Kenneth McKenna, to represent him in the negotiations. Petitioner and Mr. McKenna agreed that petitioner would pay him a fee of $75,000 for his services if the negotiations were successful.

In approximately November 1999, petitioner and the bank signed a "GENERAL RELEASE AND SETTLEMENT AGREEMENT" (the agreement). The agreement provided:

> **3.a. Payment to be Made.** In consideration of the settlement of Allum's claims alleging violation of his civil rights as asserted in Case No. CV-N-94-445 ECR[6] and without any other obligation to do so, the Bank will pay Allum the gross sum of five hundred thousand dollars ($500,000). * * *

The agreement also stated that "As further consideration and inducement" petitioner would request dismissal of ongoing Nevada State litigation and Federal litigation between petitioner and the defendants[7] and that "In exchange for the promises contained in this Agreement" petitioner would generally release all other

---

[6]The parties stipulated that the agreement erroneously refers to case No. CV-N-94-445 ECR and that the correct case reference is to case No. CV-N-94-455.

[7]The Nevada litigation consisted of seven "claims and civil litigation between Allum, the bank, and others before the courts of the State of Nevada". The Federal litigation consisted of nine "claims and civil litigation between Allum, the bank, and others before the courts of the United States", in addition to case No. CV-N-94-455.

known and unknown claims against the defendants arising out of or related to his employment relationship with the bank and the Nevada and Federal litigation.[8]

The agreement specifically provided that the bank took no position on the tax effect of the $500,000 payment to petitioner and would issue a Form 1099 regarding the payment. The agreement also provided that if any governmental authority determined the payment constituted income, petitioner would be solely responsible for the payment of all taxes arising from the determination. Furthermore, the agreement provided, in regard to attorney's fees, that--

> As further mutual consideration of the promises set forth herein, the Bank and Allum agree that they are each responsible for their own attorneys' fees and costs, and each agrees that they will not seek from the other reimbursement for attorneys' fees and/or costs incurred in this action or relating to any matter addressed in this Agreement.

---

[8]The release of claims provision consisted of both boilerplate language and, in pertinent part, the following:

> This agreement includes, but is not limited to, (i) release, waiver and discharge of any claims, * * * damages, or injuries that Allum has pled or otherwise claimed, or which Allum could have pled or otherwise claimed, in any of the * * * [Nevada and Federal litigation], (ii) release, waiver and discharge of any claims arising from any statements * * * made or distributed or published by any and all of the Released Parties, prior to signing of this Agreement by Allum, including any statements by Allum himself, and (ii) [sic] release of any claims for any type of wages, commissions, bonus, separation or severance benefits, or any other form of compensation. * * *

By the end of 1999, the bank had paid petitioner $500,000, and petitioner had paid Mr. McKenna $75,000 from the amount received.

Sometime during 1999, petitioner contacted a Nevada Congressman's office to inquire about the taxability of the settlement proceeds and received a response from a representative of a local Taxpayer Advocate Service office in return. Petitioner was dissatisfied with the clarity of that office's response, and he sent a letter dated January 20, 2000, to the District Director of the Internal Revenue Service (IRS) in Phoenix, Arizona, again inquiring about the taxability of the proceeds he received for violation of his "civil rights to a full and impartial tribunal".  On or about February 11, 2000, the District Director responded by letter to petitioner's inquiry. The letter informed petitioner of the rules generally governing the taxation of court awards and settlements, and stated:

> If this information is insufficient for your needs, there are other avenues you can follow to receive a more formal opinion on the taxability of the funds received in the settlement.  You can request an opinion letter, private letter ruling, or a determination letter.  * * *  The user fee for a ruling or letter * * * would be * * * $2,500, if your total income is over $150,000.

Petitioner did not request a ruling or letter.

On or about April 17, 2000, petitioner filed a Form 1040, U.S. Individual Income Tax Return, for 1999.  Petitioner did not include the $500,000 of settlement proceeds in the gross income he reported on his 1999 return.  Petitioner attached a statement

to his return, however, in which he stated: "I received $500,000 * * * as settlement of a lawsuit for violation of my civil rights."

On January 28, 2003, respondent mailed to petitioner a notice of deficiency in which respondent increased petitioner's gross income for 1999 by the full amount of the settlement proceeds, including the amount petitioner paid to his attorney. On February 7, 2003, petitioner's letter to the Court was filed as his imperfect petition. The Court ordered petitioner to file an amended petition by May 16, 2003. On May 13, 2003, petitioner's amended petition contesting the notice of deficiency was filed.

OPINION

In general, the Commissioner's determination of a deficiency is presumed correct, and the taxpayer bears the burden of proving otherwise. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). In this case, petitioner does not contend that section 7491(a), which shifts the burden of proof to the Commissioner if its requirements are met, applies, and petitioner has not produced evidence to show he meets the requirements of section 7491(a). The burden of proof, therefore, remains on petitioner.

A. Section 104(a)(2)

Section 61(a) includes in gross income "all income from whatever source derived" unless excluded by a specific provision

of the Code.  This statute is construed broadly, whereas
exclusions from gross income are construed narrowly.
Commissioner v. Schleier, 515 U.S. 323, 328 (1995); United States
v. Burke, 504 U.S. 229, 233 (1992); Commissioner v. Glenshaw
Glass Co., 348 U.S. 426, 431 (1955).  Section 104(a)(2) excludes
from gross income "the amount of any damages (other than punitive
damages) received (whether by suit or agreement and whether as
lump sums or as periodic payments) on account of personal
physical injuries or physical sickness".[9]

To be eligible for the section 104(a)(2) exclusion, a
taxpayer must demonstrate that (1) the underlying cause of action
giving rise to the recovery is based in tort or tort type rights,
and (2) the damages were received on account of personal physical
injuries or physical sickness.  Commissioner v. Schleier, supra
at 337; Prasil v. Commissioner, T.C. Memo. 2003-100.  In the
context of section 104(a)(2), the terms "physical injury" and
"physical sickness" do not include emotional distress, except to

_____

[9]The Small Business Job Protection Act of 1996 (SBJPA), Pub.
L. 104-188, sec. 1605, 110 Stat. 1838, amended sec. 104(a)(2) to
narrow the exclusion for damages received for personal injuries
or sickness to damages for personal injury or sickness that is
physical in nature, effective for amounts received after Aug. 20,
1996.  See United States v. Burke, 504 U.S. 229, 236 n.6 (1992)
(preamendment personal injuries or sickness did not include
damages pursuant to the settlement of purely economic rights, but
did include "nonphysical injuries to the individual, such as
those affecting emotion, reputation, or character").  SBJPA also
amended sec. 104(a)(2) to except punitive damages from the
exclusion irrespective of whether they derived from a case
involving physical or nonphysical injury.

the extent of damages not in excess of the amount paid for medical care described in section 213(d)(1)(A) and (B) attributable to emotional distress. See sec. 104(a) (flush language).

When damages are received pursuant to a settlement agreement, the nature of the claim that was the actual basis for settlement, and not the validity of the claim, controls whether such amount is excludable under section 104(a)(2). United States v. Burke, supra at 237; see also Bagley v. Commissioner, 105 T.C. 396, 406 (1995) ("[T]he critical question is, in lieu of what was the settlement amount paid?"), affd. 121 F.3d 393 (8th Cir. 1997). The determination of the nature of the claim is a factual inquiry and is generally made by reference to the settlement agreement. Robinson v. Commissioner, 102 T.C. 116, 126 (1994), affd. in part and revd. in part on another issue 70 F.3d 34 (5th Cir. 1995). An express allocation in the settlement agreement of a portion of the proceeds to tort or tortlike claims is generally binding for tax purposes if the agreement was entered into by the parties in an adversarial relationship at arm's length and in good faith. Bagley v. Commissioner, supra at 406; Robinson v. Commissioner, supra at 126-127. If the settlement agreement lacks express language stating what the settlement amount was paid to settle, we look to the intent of the payor, based on all the facts and circumstances of the case, including the complaint

that was filed and the details surrounding the litigation. Knuckles v. Commissioner, 349 F.2d 610, 613 (10th Cir. 1965), affg. T.C. Memo. 1964-33; Robinson v. Commissioner, supra at 127.

### 1. The Parties' Contentions

Respondent concedes that petitioner satisfies the first requirement for exclusion under section 104(a)(2). Respondent contends, however, that petitioner does not satisfy the second requirement for exclusion because the settlement proceeds were not received on account of personal physical injury or physical sickness, regardless of whether "petitioner's reporting his suspicions to banking authorities, his termination or the alleged violation of his procedural and substantive due process rights gave rise to the recovery of the settlement proceeds".

Petitioner contends that although the "crux of the cases, which were settled, was that the Nevada Supreme Court, through its members, utilized it [sic] power * * * to violate Allum's constitutional rights to a fair and impartial tribunal and to violate the Nevada and Federal Rules of Civil Procedure", he received the settlement funds because he had been labeled a RICO scheme participant by the Nevada Supreme Court and had lost his FHA underwriting license (license). Petitioner further contends that because he has a property interest in his license, the alleged loss of the license constitutes a personal physical injury for purposes of section 104(a)(2).

2.  Analysis

Because the settlement payment was made pursuant to the agreement between petitioner and the bank, we look first to the agreement's terms in order to determine whether the payment is attributable to a personal physical injury.  The agreement provided that the settlement amount is payable to petitioner in consideration of the settlement of petitioner's "civil rights claims" in case No. CV-N-94-455.  The agreement also required petitioner to release or request dismissal of all of his known and unknown claims against the defendants arising out of both his employment relationship with the bank and his State and Federal court claims and litigation as additional consideration for the settlement.  The agreement, however, did not allocate any part of the settlement amount to a personal physical injury or refer to a personal physical injury resulting from any civil rights violations or generally released claims.  Rather, the agreement expressly provided that the settlement amount was to be reported to the IRS on a Form 1099 and was potentially taxable.

Because we cannot clearly discern from the agreement why the settlement amount was paid, we must also look to the allegations in petitioner's complaint to determine whether the "civil rights claims" to which the proceeds are allocated are claims for personal physical injuries.  See Robinson v. Commissioner, supra at 127 (when payments are received pursuant to a settlement

agreement from which we cannot clearly discern why the payments were made, the underlying complaint is normally examined as an indicator of the payor's intent).  Petitioner alleges in his complaint that his civil rights were violated because his procedural and substantive due process rights were infringed.  In essence, he claims his due process rights were violated through judicial misconduct done in furtherance of Nevada's "good ole boy" network.  Although the complaint also includes general allegations that he suffered emotional and physical damage as a result of the alleged violations and seeks compensatory and punitive damages, it contains no specific allegations of personal physical injury or physical sickness.[10]

Neither the settlement agreement nor the complaint establishes that the bank made any portion of the settlement payment to petitioner on account of a personal physical injury or physical sickness.  The agreement and complaint only indicate that the bank made the payment on account of civil rights violations and for a general release from all of petitioner's claims.

---

[10]The mere mention of "personal physical injury" in a complaint does not, by itself, serve to exclude the recovery from gross income under sec. 104(a)(2) because the "personal physical injury" language could easily be included in every complaint, even if such claim were only a "throwaway" claim.  See Kightlinger v. Commissioner, T.C. Memo. 1998-357.

Petitioner nevertheless argues that the bank made the settlement payment as a result of the alleged loss of his license and that such loss is a personal physical injury under section 104(a)(2) so that the settlement proceeds are excludable in their entirety.  This argument, however, is unsupported by the record in this case for several reasons.  First, the agreement makes no specific allocation of proceeds to the alleged loss of the license.  Second, although petitioner's complaint alleges that petitioner was falsely labeled a participant in a RICO scheme, the complaint does not allege petitioner lost his license as a result.  Third, in March 1998, the Court of Appeals for the Ninth Circuit found that petitioner had not proved that he had been deprived of his license by the defendants, making it highly unlikely that the bank would offer petitioner $500,000 for the alleged loss of the license more than a year later.

Even if we assumed, for purposes of argument, that the bank made the settlement payment on account of the alleged loss of petitioner's license, this fact would not support petitioner's argument.  Petitioner's interest in his license is a property interest, and recovery for "business or property" is separate and distinct from recovery for personal injury.  Berg v. First State Ins. Co., 915 F.2d 460, 464 (9th Cir. 1990); Mishler v. Nev. State Bd. of Med. Examrs., 896 F.2d 408, 409-410 (9th Cir. 1990); Rylewicz v. Beaton Servs., Ltd., 888 F.2d 1175, 1180 (7th Cir.

1989); <u>Kightlinger v. Commissioner</u>, T.C. Memo. 1998-357 (citing <u>Genty v. Resolution Trust Corporation</u>, 937 F.2d 899, 918 (3d Cir. 1991)).

### 3. Conclusion

The agreement did not allocate any part of the settlement payment to any personal physical injury or physical sickness involving petitioner, and the other evidence in the record does not support such an allocation. Accordingly, we conclude that no portion of the $500,000 settlement payment was compensation for a personal physical injury or physical sickness and that petitioner is not entitled to exclude the payment from gross income under section 104(a)(2).

### 4. Petitioner's Additional Arguments

#### a. Constitutionality of Section 104(a)(2)

Alternatively, petitioner contends that section 104(a)(2) does not apply to his settlement proceeds because it is unconstitutionally vague. Petitioner argues that the local Taxpayer Advocate Service office's inability to give a "definitive answer" to his initial inquiry regarding the applicability of section 104(a)(2) provides "<u>prima</u> <u>facia</u> evidence that the IRS, the agency to enforce the statute, does not know what is included or excluded as taxable or non-taxable income."

Section 104(a)(2) provides that the amount of any damages, other than punitive damages, received by suit or agreement "on

account of personal physical injuries or physical sickness" is excludable from gross income.  The language of the statute is not vague or ambiguous such that "men of common intelligence must necessarily guess at its meaning".  Baggett v. Bullitt, 377 U.S. 360, 367 (1964); Connally v. Gen. Constr. Co., 269 U.S. 385, 391 (1926); see also Retired Teachers Legal Def. Fund, Inc. v. Commissioner, 78 T.C. 280, 285 (1982).  Moreover, the IRS specifically offered petitioner a more formal opinion on the taxability of his settlement, which petitioner refused, and postamendment section 104(a)(2) has been applied in numerous opinions with no mention of any concern about vagueness.[11]  See, e.g., Ndirika v. Commissioner, T.C. Memo. 2004-250; Lindsey v. Commissioner, T.C. Memo. 2004-113; Tamberella v. Commissioner, T.C. Memo. 2004-47; Amos v. Commissioner, T.C. Memo. 2003-329; Shaltz v. Commissioner, T.C. Memo. 2003-173.  Although the standard established in section 104(a)(2) may be difficult to apply to particular factual circumstances, this fact does not render the statute vague or ambiguous and does not persuade us to

_____

[11]When other constitutional challenges have been raised against sec. 104(a)(2), the statute consistently has been upheld. See, e.g., Polone v. Commissioner, T.C. Memo. 2003-339 (postamendment sec. 104 is not unconstitutionally retroactive); Venable v. Commissioner, T.C. Memo. 2003-240 (postamendment sec. 104 is neither retroactive nor unconstitutional), affd. 110 Fed. Appx. 421 (5th Cir. 2004); see also Young v. United States, 332 F.3d 893 (6th Cir. 2003) (the distinction in postamendment sec. 104(a)(2) between physical and nonphysical injury does not violate the Equal Protection Clause of the Fifth Amend.).

find section 104(a)(2) unconstitutional.  See <u>Cottrell v. Commissioner</u>, T.C. Memo. 1970-218.

### b.   Capital Investment

Petitioner argues that the settlement proceeds are "not only for 'personal physical injury'" but are also a nontaxable return on capital because they are allocable to the loss of his license as the source of his business and to the loss of goodwill he generated in being known for his honesty and trustworthiness. See, e.g., <u>OKC Corp. & Subs. v. Commissioner</u>, 82 T.C. 638, 650 (1984) (settlement proceeds may be received as a replacement for capital destroyed or for the sale or exchange of a capital asset so that they are treated as a nontaxable return of capital or a taxable capital gain, respectively).

The record contains no credible evidence that the bank made any portion of the settlement payment for petitioner's alleged loss of license or goodwill, and petitioner has otherwise failed to show that the settlement proceeds, in whole or in part, are attributable to the damage of any capital asset.  Consequently, we reject petitioner's argument.

### B.   Attorney's Fees and Costs

### 1.   Commissioner v. Banks

In <u>Commissioner v. Banks</u>, 543 U.S. ___, 125 S. Ct. 826 (2005), the U.S. Supreme Court addressed whether the portion of a money judgment or settlement paid to a plaintiff's attorney under

a contingent fee agreement was includable in the plaintiff's gross income.  The Supreme Court held that a contingent fee agreement between an attorney and a client should be viewed as an anticipatory assignment to the attorney of a portion of the client's income from any litigation recovery[12] and that, "as a general rule, when a litigant's recovery constitutes income, the litigant's income includes the portion of the recovery paid to the attorney as a contingent fee."  Id. at ___, ___, 125 S. Ct. at 829, 831.  The Supreme Court's holding is consistent with prior opinions of this Court holding that the portion of a recovery paid to an attorney as a contingent fee is includable in the litigant's income.  See Kenseth v. Commissioner, 114 T.C. 399 (2000), affd. 259 F.3d 881 (7th Cir. 2001); O'Brien v. Commissioner, 38 T.C. 707, 712 (1962), affd. per curiam 319 F.2d 532 (3d Cir. 1963).

2.    The Parties' Contentions

Petitioner argues that the portion of the settlement amount used to pay his attorney's fees is not includable in his gross

_____

[12]Under the anticipatory assignment of income doctrine, a taxpayer cannot exclude an economic gain from gross income by assigning the gain in advance to another party.  Commissioner v. Banks, 543 U.S. ___, ___, 125 S. Ct. 826, 831 (2005).  The rationale for this doctrine is that "gains should be taxed 'to those who earn them', a maxim we have called 'the first principle of income taxation'".  Id. at ___, 125 S. Ct. at 831 (citations omitted).  In order to preserve this principle, when income is anticipatorily assigned it is attributed to the taxpayer who retains dominion over the income-generating asset.  Id. at ___, 125 S. Ct. at 831-832.

income because the nature of his relationship with the defendants, the nature of his underlying claims, and the retention of his attorney "for the sole purpose of culminating the settlement agreement" distinguish his case from Commissioner v. Banks, supra; and his relationship with his attorney constituted a "de facto subchapter K partnership".[13]  Respondent contends that Banks is controlling and that the portion of the settlement amount used to pay petitioner's attorney's fees must be included in petitioner's gross income.  Respondent concedes that petitioner may deduct the amount of the attorney's fees as a miscellaneous itemized deduction subject to the restrictions of sections 67 and 68 and the alternative minimum tax provisions. We agree with respondent.

---

[13]Petitioner also contends that "If any tax is determined to be due", the filing fees, discovery fees, and supply costs he allegedly incurred in pursuing his claims against the bank "should be excluded as costs of producing the taxable income." We interpret this as petitioner's argument that the fees and costs are deductible as expenses paid or incurred for the production of income under sec. 212(1).  Deductions are strictly a matter of legislative grace, and petitioner must show that his deductions are allowed by the Internal Revenue Code.  Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).  Petitioner must also keep sufficient records to substantiate any deductions otherwise allowed by the Internal Revenue Code.  Sec. 6001; see New Colonial Ice Co. v. Helvering, supra at 440.  Petitioner provided no evidence regarding any of the alleged fees and costs other than his own vague testimony. In the absence of corroborating evidence, we are not required to accept petitioner's self-serving testimony.  See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986).  Because petitioner has failed to substantiate the fees and costs, he is not entitled to deduct them.

3.  Analysis

In Commissioner v. Banks, supra, the Supreme Court consolidated the cases of taxpayers John W. Banks II and Sigitas J. Banaitis.  Mr. Banks had retained an attorney on a contingent fee basis and had filed a civil suit against his employer alleging employment discrimination under Federal and State law. Id. at ___, 125 S. Ct. at 829.  Mr. Banaitis had retained an attorney on a contingent fee basis and had filed a civil suit against his employer alleging willful interference with his employment contract and wrongful termination.  Id. at ___, 125 S. Ct. at 830.  Both taxpayers settled their claims, and neither taxpayer included the amount of settlement proceeds paid to his attorney in his gross income.  Id. at ___, 125 S. Ct. at 829-830. The Commissioner issued to each taxpayer a notice of deficiency in which the Commissioner determined that the amount paid to the taxpayer's attorney as a contingent fee was includable in the taxpayer's income, and each taxpayer contested the determination. Id.  Relying on the facts that the taxpayers retained control over their legal claims (income-generating assets), diverted some of the settlement amount to their attorneys through their respective contingent fee agreements, and realized a consequent benefit, the Supreme Court decided that each taxpayer must include in his gross income the portion of the settlement amount

paid to his attorney under the contingent fee agreement.  Id. at

___, ___, ___, 125 S. Ct. at 828-829, 832, 834.

In arriving at its decision, the Supreme Court rejected the

taxpayers' argument that a contingent fee agreement establishes,

for tax purposes, a joint venture or partnership "in which the

client and attorney combine their respective assets--the client's

claim and the attorney's skill--and apportion any resulting

profits."  Id. at ___, 125 S. Ct. at 832-833.  In rejecting this

argument, the Supreme Court reasoned that "regardless of the

variations in particular compensation agreements or the amount of

skill and effort the attorney contributes," the relationship

between a client and his attorney is a "quintessential principal-

agent relationship" because the client retains ultimate dominion

and control over the underlying claim, and the attorney is

dutybound to act only in the interests of the client.  Id. at

___, ___, 125 S. Ct. at 832, 833.  The Supreme Court further held

that the client may not exclude litigation proceeds used to pay

attorney's fees from his gross income, even when the attorney-

client contract or State law confers special rights or

protections on the attorney, including providing the attorney

with an "ownership interest" in his fees, so long as these

protections do not alter the fundamental principal-agent

character of the relationship.  Id. at ___, 125 S. Ct. at 833.

The Supreme Court declined to address whether a contingent fee

agreement established a "Subchapter K partnership", however, because the "novel [proposition] of law with broad implications for the tax system" was not advanced at an earlier stage of the litigation.  Commissioner v. Banks, 543 U.S. at ___, 125 S. Ct. at 833.

### a.  Petitioner's Argument That Banks Is Distinguishable

In this case, petitioner hired an attorney to represent him in the settlement of his legal claims against the defendants on a contingent fee basis, received a settlement amount from the defendants, failed to include the settlement amount, including the portion paid to his attorney, in his gross income, and was issued a notice of deficiency by respondent.  This is precisely the type of situation the Supreme Court considered in Banks.  We therefore reject petitioner's contention that Banks is not controlling because the type of facts on which he relies to distinguish his case--the nature of his relationship with the defendants and his underlying claims,[14] and what he terms his

---

[14]The Supreme Court did consider the fact that Mr. Banks brought his legal claims under Federal statutes authorizing fee awards to prevailing plaintiff's attorneys due to Mr. Banks' contention that the application of the anticipatory assignment of income principle would be inconsistent with the purpose of statutory fee-shifting provisions.  Commissioner v. Banks, 543 U.S. at ___, 125 S. Ct. at 834.  Because Mr. Banks ultimately settled his claims and his attorney received his fee pursuant to their contingent fee arrangement rather than a statutory fee-shifting provision, however, the Supreme Court did not address this contention.  Id.  Petitioner has not asserted a similar

(continued...)

"one event relationship" with his attorney--provide no meaningful distinction from <u>Banks</u>.

>    b.    <u>Petitioner's Subchapter K Partnership Argument</u>

Petitioner also contends that the portion of the settlement amount used to pay his attorney's fees is not includable in his gross income because a de facto subchapter K partnership existed between petitioner and his attorney.  Petitioner argues that he combined his rights in his settlement recovery with his attorney's professional license, that "The gross income produced by the partnership (settlement monies from the defendants) could not have occurred without the partnership", and that the relationship between petitioner and his attorney "is analogous to the horse owner and trainer in <u>McDougal v. Commissioner</u>, 62 T.C. 720 (1974) in which the court determined that a joint venture resulted."  We reject petitioner's attempt to avoid Federal income taxation of the portion of the settlement amount he paid to his attorney by labeling his relationship with his attorney a subchapter K partnership.

-----

[14](...continued)
contention in this case.

The substantive law governing the Federal income taxation of partners and partnerships is found in subchapter K (sections 701 through 777) of the Code.[15]  See Rhone-Poulenc Surfactants & Specialties, L.P. v. Commissioner, 114 T.C. 533, 539 (2000).  An entity that meets the definition of partnership provided by section 761(a)--"a syndicate, group, pool, joint venture or other unincorporated organization through or by means of which any business, financial operation, or venture is carried on, and which is not * * * a corporation or a trust or estate"--is thus subject to the provisions of subchapter K.[16]  See sec. 1.761-1,

---

[15]A joint venture or other contractual arrangement may create a separate entity for Federal tax purposes if the participants carry on a trade, business, financial operation, or joint venture and divide the profits therefrom.  Sec. 301.7701-1(a)(2), Proced. & Admin. Regs.  An eligible domestic business entity with two or more members will be classified for Federal tax purposes as a partnership unless it elects to be classified as a corporation.  See sec. 301.7701-2(a), Proced. & Admin. Regs. (defining "business entity" as "any entity recognized for federal tax purposes * * * that is not properly classified as a trust under §301.7701-4 or otherwise subject to special treatment under the Internal Revenue Code"); see also sec. 301.7701-3(a) and (b), Proced. & Admin. Regs.  Whether an organization is an entity separate from its owners for Federal tax purposes is a matter of Federal tax law and does not depend on whether the organization is recognized as an entity under local law.  Sec. 301.7701-1(a)(1), Proced. & Admin. Regs.

[16]Sec. 761(a) also provides that the members of an unincorporated organization may elect to exclude such organization from the application of all or part of subch. K if it is availed of (1) for investment purposes only and not for the active conduct of a business, (2) for the joint production, extraction, or use of property, but not for the purpose of selling services or property produced or extracted, or (3) by dealers in securities for a short period for the purpose of

(continued...)

Income Tax Regs.; see also sec. 7701(a)(2) (providing the same definition of "partnership" as section 761(a) for purposes of the Code); secs. 301.7701-1, 301.7701-2, and 301.7701-3, Proced. & Admin. Regs.

In order to determine whether a partnership exists for Federal income tax purposes, and is thereby subject to the provisions of subchapter K, the Court must consider whether, in light of all the facts, the parties in good faith and acting with a business purpose intended to join together in the present conduct of an enterprise. Commissioner v. Culbertson, 337 U.S. 733, 743 (1949). Factors the Court may consider in making this determination include the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual

---

[16](...continued)
underwriting, selling, or distributing a particular issue of securities, if the income of the members of the organization may be adequately determined without computation of partnership income. Such electing organizations are still considered partnerships for purposes of the other sections of the Code, however. Bryant v. Commissioner, 46 T.C. 848, 864 (1966) ("The election under section 761(a) does not operate to change the nature of the entity. * * * The partnership remains intact and other sections of the Code are applicable as if no exclusion existed."), affd. 399 F.2d 800 (5th Cir. 1968). Subch. K, therefore, governs the Federal income tax treatment of an entity qualifying as a partnership under secs. 761(a) and 7701(a)(2), and their accompanying regulations, unless it is an entity specifically enumerated in sec. 761(a) that is eligible to elect out of subch. K treatment and does so.

control of income and the purposes for which it is used, and any other facts throwing light on their true intent. Id. at 742; see also Luna v. Commissioner, 42 T.C. 1067, 1077-1078 (1964) (other factors to consider include whether each party was a principal and coproprietor, or whether one party was the agent or employee of the other, receiving for his services contingent compensation in the form of a percentage of income; whether the parties filed Federal partnership returns or otherwise represented to respondent or to persons with whom they dealt that they were joint venturers; and whether the parties exercised mutual control over and assumed mutual responsibilities for the enterprise).

The record in this case does not support petitioner's contention that a subchapter K partnership existed, for several reasons. First, petitioner produced no evidence that he intended to form a partnership with his attorney. The record contains only an argument, made for the first time on brief, that a de facto subchapter K partnership "existed" because of the combination of his interest in his legal claims and his attorney's professional license. Second, contrary to the position he advocated on brief, petitioner both testified at trial and submitted to the Court as a stipulation of fact that he "hired" his attorney "to represent him" in the settlement of his legal claims and paid him for "services he rendered", demonstrating that petitioner did not view his attorney as a

coowner of his legal claims, but as a legal representative receiving compensation for his services. See <u>Kessler v. Commissioner</u>, T.C. Memo. 1982-432 (merely providing compensation to an employee or independent contractor on a contingent fee basis, as is common among attorneys, does not convert the relationship to a partnership for Federal tax purposes); see also <u>Smith v. Commissioner</u>, 33 T.C. 465, 487 (1959), affd. in part, revd. in part and remanded on another issue 313 F.2d 724 (8th Cir. 1963); <u>Comtek Expositions, Inc. v. Commissioner</u>, T.C. Memo. 2003-135, affd. 99 Fed. Appx. 343 (2d Cir. 2004). Third, petitioner produced no evidence regarding whether the attorney intended to form a partnership with him. It is well established that the failure of a party to introduce evidence which, if true, would be favorable to him, gives rise to the presumption that the evidence would be unfavorable if produced. <u>Wichita Terminal Elevator Co. v. Commissioner</u>, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947).

Furthermore, the record demonstrates that petitioner's reliance on <u>McDougal v. Commissioner</u>, 62 T.C. 720 (1974), is misplaced. In <u>McDougal</u>, we determined whether the taxpayer's transfer of a one-half interest in a racehorse to a horse trainer constituted a contribution to a partnership or joint venture formed by the taxpayer and trainer. <u>Id.</u> The taxpayer had purchased the horse on the trainer's advice, and he promised the

trainer a one-half interest in the animal once he had recovered acquisition costs and expenses. Id. at 721. The taxpayer did not make the promise in lieu of payment of the standard trainer's fee, however, and continued to compensate the trainer for the services he provided in relation to the horse until the time of the transfer. After the transfer, the taxpayer and the trainer made joint decisions regarding the horse, created a partnership agreement, agreed to share profits equally, computed what the partnership's tax return would show (although they did not file a partnership return for the year in issue), and reported the results of the computation on their individual returns. Id. at 722, 723. Because of the presence of all of these factors, we found that the taxpayer and the trainer had formed a joint venture. Id. at 725. McDougal, therefore, is distinguishable from this case because there is no evidence petitioner and his attorney agreed to form a partnership, shared control over petitioner's legal claims, considered their relationship a separate entity for tax purposes or treated it as such, or considered the attorney's fees to be anything other than compensation for services. Consequently, we reject petitioner's contention.

C. Conclusion

Because the Supreme Court's opinion in Commissioner v. Banks, 543 U.S. ___, 125 S. Ct. 826 (2005), is controlling, we

hold that the entire settlement amount, including the portion petitioner paid to his attorney pursuant to a contingent fee agreement, must be included in petitioner's gross income.  See Helvering v. Horst, 311 U.S. 112 (1940); Lucas v. Earl, 281 U.S. 111 (1930).  We have carefully considered all remaining arguments made by the parties for results contrary to those expressed herein and, to the extent not discussed above, conclude that those arguments are without merit.

To reflect the foregoing,

Decision will be entered under Rule 155.