T.C. Memo. 2009-143

UNITED STATES TAX COURT

JON E. HELLESEN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8606-05.                    Filed June 18, 2009.

Jon E. Hellesen, pro se.

<u>Monica D. Gingras</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, <u>Judge</u>:  Respondent determined a $87,422 deficiency in petitioner's 1997 Federal income tax and a $21,855.50 addition to tax under section 6651(a)(1).[1]  The deficiency arises from

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code, and all Rule references are to the Tax Court Rules of Practice and Procedure.

$273,500 of unreported income from settlement proceeds, interest received, and a State income tax refund. Petitioner conceded the deficiency relating to the interest and the State income tax refund.

The issues for decision are: (1) Whether petitioner may exclude the settlement proceeds received from his gross income pursuant to section 104(a)(2); and (2) whether petitioner is liable for an addition to tax under section 6651(a)(1) for his failure to timely file a return. We hold that the settlement award is not excludable from gross income and petitioner is liable for the failure to file addition to tax under section 6651(a)(1).

                         FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioner resided in California at the time of filing his petition with this Court.

Petitioner was employed as a claims litigation attorney by State Farm Insurance Co. (State Farm) from April 1988 through August 12, 1994. Petitioner's wife, Beverly Harlan (Ms. Harlan), was also employed as a claims litigation attorney by State Farm from September 20, 1991, through February 13, 1995. Petitioner and his wife jointly filed a lawsuit against State Farm based on allegations related to their employment and discharge from State

Farm.  Petitioner and Ms. Harlan filed the lawsuit on August 8, 1995, and alleged the following seven causes of action:

> (1)  Sexual Harassment/Discrimination under Gov. Code § 12940, et seq. on Behalf of PLAINTIFF BEVERLY HARLAN v. [sic] All DEFENDANTS,
>
> (2)  Tortious Discharge In Contravention of Public Policy on Behalf of PLAINTIFF BEVERLY HARLAN vs. All DEFENDANTS,
>
> (3)  Negligence on behalf of PLAINTIFF BEVERLY HARLAN vs. All DEFENDANTS,
>
> (4)  Negligent Misrepresentation on Behalf of PLAINTIFF BEVERLY HARLAN vs. All DEFENDANTS,
>
> (5)  Fraud - Labor Code § 970-972 on Behalf of PLAINTIFF BEVERLY HARLAN vs. All DEFENDANTS,
>
> (6)  Tortious Discharge in Contravention of Public Policy Behalf of PLAINTIFF JON E. HELLESEN vs. All DEFENDANTS, and
>
> (7)  Negligence on Behalf of PLAINTIFF JON E. HELLESEN vs. All DEFENDANTS.

In the complaint petitioner alleged that he had suffered extreme and severe emotional distress including a lack of concentration, loss of self-esteem, embarrassment, anxiety, humiliation and stress.  Petitioner requested general damages.

In the prayer for relief portion of the complaint petitioner did not ask for damages resulting from physical injuries or sickness from emotional distress.  Petitioner asked for general damages and further relief as the court deemed proper.

In connection with the lawsuit petitioner was deposed on September 10, 11, and 12, 1996.  In the deposition petitioner stated that he was a victim of sexual harassment while working at

State Farm and that it caused him to pace and to feel upset, nervous, and stressed. Petitioner was able to work after his termination from State Farm, but physical problems occurred as a result of the termination. Petitioner experienced an escalation in chest pains,[2] an aching pain and loss of sensitivity on the right side of his forehead, increased blood pressure, weight loss, an upset stomach, irregular bowel movements, headaches, and emotional instability.

Petitioner had a single appointment with each of two physicians, Dr. Raszinski and Dr. Viltuznik, regarding his physical ailments. Petitioner did not provide proof of costs incurred for seeing the two physicians or paying for any sort of medical care.

Petitioner saw Dr. Raszinski for his chest pains. The doctor instructed petitioner to reduce his stress level and did not diagnose a heart problem or prescribe him any medication. Petitioner told Dr. Raszinski that difficulty at work had caused his stress.

Petitioner saw Dr. Viltuznik for the pain and loss of sensitivity over his right eye. Petitioner told Dr. Viltuznik "it [area over right eye] seems to be a weakened area on my body that as stress or upset, feelings build, it goes there." On deposition petitioner did not recall whether Dr. Viltuznik made a

_____

[2] Petitioner began feeling chest pains in 1993.

diagnosis. Petitioner was referred to another doctor or medical center for the condition but did not see anyone else about the condition. At trial petitioner stated that Dr. Viltuznik had diagnosed a condition in his head and stated that in 1994 a blood vessel had burst in his head on the right side. Petitioner reported this condition had not improved.

Petitioner has lost approximately 20 pounds since his termination by State Farm. He began having an upset stomach while working at State Farm. After his termination petitioner became more emotional, and an upset stomach became a daily problem.

Petitioner and his wife settled their lawsuit with State Farm on August 19, 1997, for $550,000 less $3,000, the cost of the arbitrator. In 1997 petitioner received a check for $273,500, and in 1997 State Farm reported on a Form 1099-MISC, Miscellaneous Income, that it paid petitioner $273,500. In the Settlement Agreement and General Release (settlement agreement), a paragraph titled "WITNESSETH" states as follows:

> WHEREAS, CLAIMANTS claim they suffered personal physical injuries and sickness, including, but not limited to, medial [sic] injuries, costs and treatment, resulting from being subjected to sexual harassment, wrongful termination and retaliation caused by Defendant, resulting in physical disabilities;

The "SETTLEMENT AND RELEASE" portion of the settlement agreement states as follows:

> Said amount includes all obligations by Defendants to CLAIMANTS including, without limitation, severance pay, sick pay, and other wages or benefits, and general damages for personal physical injuries and sickness, including medical costs and treatment incurred therein, as well as emotional injuries arising from CLAIMANTS' alleged personal physical injuries and sickness from alleged sexual harassment, wrongful termination and retaliation and all other statutory, tort, contract or other claims of any kind.

The settlement agreement does not allocate the portions of the total amount being paid to settle claims related to sexual harassment, tortious discharge, negligence, negligent misrepresentation, and fraud. Further, there is no allocation of the portions of the total amount being paid to petitioner and Ms. Harlan; each received a check for half of the total settlement.

Petitioner filed his 1997 Federal income tax return on August 11, 2000. Petitioner's Federal tax return for 1997 was due on August 15, 1998, because petitioner received an extension. Petitioner did not report any of the settlement proceeds as income on his 1997 return.

OPINION

I. Deficiency

A. Burden of Proof

Generally, the taxpayer bears the burden of proving the Commissioner's deficiency determinations incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Petitioner has neither claimed nor shown that he satisfied the requirements of section 7491(a) to shift the burden of proof to respondent.

Accordingly, petitioner bears the burden of proof.  See Rule 142(a).

B.  <u>Section 104</u>

It is well established that, pursuant to section 61(a), gross income includes all income from whatever source derived unless otherwise excluded by the Internal Revenue Code.  See <u>Commissioner v. Glenshaw Glass Co.</u>, 348 U.S. 426, 429-431 (1955). Exclusions from gross income are construed narrowly. <u>Commissioner v. Schleier</u>, 515 U.S. 323, 327-328 (1995).

As relevant here, section 104 provides:

SEC. 104.  COMPENSATION FOR INJURIES OR SICKNESS.

(a) In General.--Except in the case of amounts attributable to (and not in excess of) deductions allowed under section 213 (relating to medical, etc., expenses) for any prior taxable year, gross income does not include--

*  *  *  *  *  *  *

(2) the amount of any damages (other than punitive damages) received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal physical injuries or physical sickness;

*  *  *  *  *  *  *

* * * For purposes of paragraph (2), emotional distress[3] shall not be treated as a physical injury or physical sickness.  The preceding sentence shall not apply to an

---

[3] "[T]he term emotional distress includes symptoms (e.g., insomnia, headaches, stomach disorders) which may result from such emotional distress."  H. Conf. Rept. 104-737, at 301 n.56 (1996), 1996-3 C.B. 741, 1041.

amount of damages not in excess of the amount paid for medical care (described in subparagraph (A) or (B) of section 213(d)(1)) attributable to emotional distress.[4]

"Damages received" means amounts received "through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution."  Sec. 1.104-1(c), Income Tax Regs.  In evaluating whether amounts received pursuant to the settlement agreement are excludable from income pursuant to section 104(a)(2), we look to the written terms of the settlement agreement to determine the origin and allocation of the settlement proceeds.  See Metzger v. Commissioner, 88 T.C. 834 (1987), affd. without published opinion 845 F.2d 1013 (3d Cir. 1988); Jacobs v. Commissioner, T.C. Memo. 2000-59, affd. sub nom. Connelly v. Commissioner, 22 Fed. Appx. 967 (10th Cir. 2001).

Petitioner and State Farm entered into a written settlement agreement before trial.  Petitioner was paid $273,500 to settle all claims.  Petitioner did not allege a cause of action in the lawsuit for personal physical injuries or sickness; rather petitioner claimed general damages resulting from negligence. There is no allocation of amounts paid to settle physical injuries and sickness.  However, the amounts petitioner received

---

[4]  Sec. 104 was amended by the Small Business Job Protection Act of 1996, Pub. L. 104-188, sec. 1605, 110 Stat. 1838, to provide, effective for amounts received after Aug. 20, 1996, that the personal injury or sickness for which the damages are received must be physical.

settled all obligations by State Farm to pay petitioner for any personal physical injuries and sickness arising from alleged sexual harassment, wrongful termination, retaliation, and all other statutory, tort, contract, or other claims of any kind.

If a settlement agreement lacks express language stating what the settlement amount was paid to settle, we look to the intent of the payor, on the basis of all the facts and circumstances of the case, including the complaint filed and details surrounding the litigation. United States v. Burke, 504 U.S. 229 (1992); Robinson v. Commissioner, 102 T.C. 116, 127 (1994), affd. in part and revd. in part on another issue 70 F.3d 34 (5th Cir. 1995); Knuckles v. Commissioner, T.C. Memo. 1964-33, affd. 349 F.2d 610 (10th Cir. 1965). A key question to ask is "'In lieu of what were the damages awarded?'" Robinson v. Commissioner, supra at 126 (quoting Raytheon Prod. Corp. v. Commissioner, 144 F.2d 110, 113 (1st Cir. 1944), affg. 1 T.C. 952 (1943)).

We have previously addressed factual scenarios where a settlement has been reached between the parties and there is no express allocation of an amount of the settlement for physical sickness and injuries. See Pettit v. Commissioner, T.C. Memo. 2008-87. In Pettit, a $240,000 settlement was apportioned as follows: $44,250.12 attributed to lost wages; and $195,749.88 attributed to emotional distress, pain and suffering, and other

nonwage damages.  The settlement agreement made no allocation to compensation for a physical injury or physical sickness, and the Court made no apportionment of any of the settlement proceeds to a physical injury or physical sickness.  See also Seidel v. Commissioner, T.C. Memo. 2007-45, affd. without published opinion 103 AFTR 2d 2009-1788, 2009-1 USTC par. 50,370 (9th Cir. 2009) (written settlement agreement said:  "'[petitioner] acknowledges that she considers the payment of the check payable to her without withholdings to be compensation for personal injury (i.e., emotional distress) damages only'", but did not specifically allocate any portion of the settlement as paid for a physical injury or physical sickness).  Although petitioner has stated his impression that in reaching a settlement, State Farm was very concerned about his physical injuries, petitioner has not presented any evidence in support of his impression, and we are not required to accept petitioner's self-serving testimony. See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986).

Petitioner and his wife alleged seven causes of action in their lawsuit.  Petitioner did not allege physical injury or sickness in his complaint, but the settlement agreement is broad and encompasses all possible causes of action, including physical injuries.  However, there is no allocation of a specific amount of the settlement as compensation for physical injuries or physical sickness.  Without such an allocation, no amount of the

settlement may be excluded from income. Pettit v. Commissioner, supra; Seidel v. Commissioner, supra. Petitioner must report the entire settlement amount as income received in 1997.

II. Failure To File Addition to Tax

Section 6651(a)(1) imposes an addition to tax for failure to file a return when due "unless it is shown that such failure is due to reasonable cause and not due to willful neglect". The addition equals 5 percent for each month that the return is late, not to exceed 25 percent in total. The Commissioner has the burden of production with respect to the liability of an individual for an addition to tax under section 6651(a)(1). Sec. 7491(c). The burden of showing reasonable cause under section 6651(a) remains on the taxpayer. Higbee v. Commissioner, 116 T.C. 438, 446-448 (2001). To show reasonable cause, petitioner must demonstrate that he exercised ordinary business care and prudence but nevertheless was unable to file his 1997 Federal income tax return by the due date. See United States v. Boyle, 469 U.S. 241, 246 (1985); sec. 301.6651-1(c), Proced. & Admin. Regs. Willful neglect is defined as a "conscious, intentional failure or reckless indifference." United States v. Boyle, supra at 245.

Petitioner has stipulated that he did not file his 1997 Federal income tax return until August 11, 2000. Petitioner's 1997 Federal income tax return was due on August 15, 1998.

Respondent accordingly met his burden of production with regard to the section 6651(a)(1) addition to tax.  See sec. 7491(c); Higbee v. Commissioner, supra.

Petitioner has neither offered an explanation for his failure to timely file his 1997 Federal income tax return nor produced evidence to establish any reasonable cause for his failure to timely file this return.  We sustain respondent's determination of an addition to tax under section 6651(a)(1).

We have considered all of the contentions and arguments of the parties that are not discussed herein, and we find them to be without merit, irrelevant, or moot.

To reflect the foregoing,

Decision will be entered

for respondent.

Y