T.C. Summary Opinion 2011-36

UNITED STATES TAX COURT

ROBERT HAROLD HIGH, Petitioner $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 30525-08S.               Filed March 28, 2011.

Robert Harold High, pro se.

Scott A. Hovey, for respondent.

GUSTAFSON, Judge:  This case was heard pursuant to the
provisions of section 7463[1] of the Internal Revenue Code in
effect when the petition was filed.  Pursuant to section 7463(b),
the decision to be entered is not reviewable by any other court,

---

[1]Unless otherwise noted, citations herein of sections refer
to the Internal Revenue Code (26 U.S.C.), and citations of Rules
refer to the Tax Court Rules of Practice and Procedure.

and this opinion shall not be treated as precedent for any other case.

By a statutory notice of deficiency dated September 8, 2008, the Internal Revenue Service (IRS) determined a deficiency of $18,121 in petitioner Robert Harold High's 2006 Federal income tax, as well as an addition to tax of $1,620 pursuant to section 6651(a)(1) and an accuracy-related penalty of $3,624 pursuant to section 6662(a). Mr. High initiated this case pursuant to section 6213(a), asking this Court to redetermine the deficiency. After concessions,[2] the issues for decision are (i) whether either of the payments of $11,675 and $54,000 that Mr. High received from Worldwide Flight Services, Inc. (Worldwide), in 2006 is excludable from his gross income under section 104(a)(2); and (ii) whether Mr. High is liable for (a) an addition to tax under section 6651(a)(1) for failing to timely file his 2006 return, and (b) an accuracy-related penalty under section 6662(a).

For the reasons set forth below, we hold (i) that no portion of the $65,675 Mr. High received from Worldwide in 2006 is

---

[2]Mr. High does not dispute the following adjustments to income in the notice of deficiency: interest income of $87 from Washington Mutual Bank; interest income of $76 from Nevada State Bank; and interest income of $49 from Bank of America. The notice of deficiency also determined that Mr. High was liable for an additional tax of $39 for early withdrawal under section 72(t). Mr. High did not assign error to this adjustment in his petition and has not raised it otherwise. Pursuant to Rule 34(b)(4), we find that Mr. High has conceded this adjustment as well.

properly excludable from his gross income under section 104(a)(2); and (ii) Mr. High is liable for the addition to tax and the accuracy-related penalty.

## Background

This case was submitted fully stipulated pursuant to Rule 122. The stipulation of facts filed May 5, 2010, and the attached exhibits are incorporated herein by this reference. At the time he filed the petition herein, Mr. High resided in Thailand.

Mr. High's discrimination settlement

Mr. High worked for Worldwide Flight Services, Inc. (Worldwide),[3] before 1989. Sometime in 1989 he was discharged from Worldwide. In early 1990 Mr. High filed a complaint with the Division of Human Rights, State of New York: Executive Department. In the complaint Mr. High charged Worldwide with unlawful discriminatory practices relating to an employment violation of the Human Rights Law of the State of New York.[4] The Division of Human Rights found that Mr. High was entitled to damages, and in October 2004 the Appellate Division affirmed that

---

[3]Before 1999 Mr. High's employer was known as AMR Services Corp. In 1999 Castle Harlan purchased AMR and renamed it Worldwide. At the time of the settlement at issue here, the entity was named Worldwide, so for the sake of simplicity we use that name throughout this opinion.

[4]The exact nature of the unlawful discriminatory practices alleged is unclear as the complaint is not part of the record in this case.

finding with modifications. In December 2004 the Division of Human Rights directed Mr. High and Worldwide to undertake proceedings to resolve the amount of those damages. (Neither the complaint, nor the decision of the Division of Human Rights, nor the Appellate Division's affirmance is in our record.)

In early July 2006, Mr. High and Worldwide entered into a settlement agreement (the Settlement) resolving all disputes between the parties. On July 27, 2006, the Settlement was adopted by the Division of Human Rights. The Settlement provided that Mr. High would receive total compensation of $110,000 allocated between (i) $56,000 in backpay that would be reported on a Form W-2, Wage and Tax Statement, and (ii) $54,000 as interest on said back pay that would be reported on a Form 1099-MISC, Miscellaneous Income.

Worldwide's payments to Mr. High

On June 22, 2006--i.e., before the Settlement was finalized in July 2006--Worldwide issued to Mr. High a check for $11,675, which Worldwide recorded as "interest on legal settlement" in its accounting system. Shortly after the Settlement was finalized, on or about July 17, 2006, Worldwide issued a check to Mr. High for $54,000, which Worldwide recorded as "interest on legal settlement" in its accounting system. Sometime during 2006 Worldwide also issued a separate check to Mr. High for $56,000, in satisfaction of its obligation under the Settlement for back

pay.  From that $56,000 Worldwide withheld $14,000 in Federal income tax, $3,472 in Social Security tax, and $812 in Medicare tax.

Worldwide's and Mr. High's tax reporting

In early 2007, in anticipation of the tax filing season for tax year 2006, Worldwide issued two separate information returns to Mr. High--a Form 1099-MISC reporting $65,675 in miscellaneous income; and a Form W-2 reporting $56,000 in wages, $14,000 in Federal withholdings, $3,472 in Social Security withholdings, and $812 in Medicare withholdings.

Mr. High filed his Form 1040, U.S. Individual Income Tax Return, for tax year 2006 in 2007.  The precise date of the filing of that return is in dispute, but on the record before us we find that the IRS received it on June 5, 2007.  On his return Mr. High did include in his gross income the $56,000 of back pay that he had received from Worldwide and that Worldwide had reported on Form W-2.  The taxability of that amount is not in dispute.  Mr. High did not report on his return, as gross income or otherwise, the two other payments--$11,675 and $54,000 denominated as interest--that he had received from Worldwide in 2006 and that Worldwide had reported on Form 1099-MISC.  On line 21 of his 2006 return Mr. High reported $21,215 in other income from sources other than Worldwide.[5]  The return reflected a

_____

[5]This other income presumably did not include the amounts
(continued...)

refund due to Mr. High in the amount of $1,929.  Using the figures reported on Mr. High's return, on or about June 25, 2007, the IRS issued a refund to Mr. High in the requested amount of $1,929.

The statutory notice of deficiency and the commencement of this suit

However, the IRS thereafter became aware of Worldwide's Form 1099-MISC showing additional income to Mr. High that he had not reported.  On September 8, 2008, the IRS issued the statutory notice of deficiency to Mr. High for tax year 2006.  In that notice the IRS determined a deficiency of $18,121, a failure-to-file penalty of $1,620 pursuant to section 6651(a)(1), and an accuracy-related penalty of $3,624 pursuant to section 6662(a).  The primary adjustment was attributable to Mr. High's failure to include, in his 2006 gross income, the payments of $11,675 and $54,000 that he had received from Worldwide in 2006.

Mr. High timely petitioned this Court under section 6213.  In his amendment to petition, filed July 1, 2009, Mr. High stated:

> I FILED MY 2006 - TAX RETURN WITH PRO-TAX SERVICES - IN
> LAS VEGAS ON TIME.  THE IRS HAS ALL MY 2006 W2 FORMS
> FROM ALL MY INCOME WHEN THEY (IRS) SENT ME A TAX REFUND
> FOR THAT YR. 2006 THEY HAD THE 1099 MISC. FORM, FOR THE
> 65,675 DOLLARS AT THE TIME THEY MAILED MY REFUND CHECK.
> IF MY FILING WAS INCORRECT - THE IRS HAD THE
> INFORMATION TO CORRECT IT.  I WAS FIRED FROM WORLD WIDE
> SERVICES IN 1988 - THE CASE WAS SETTLED IN 2006 - THE

---

[5](...continued)
Mr. High conceded in this case.  See supra note 2.

$65,675 REPRESENTED MY MEDICAL EXPENSES FOR THE 18 YRS.
PLUS PAIN AND SUFFERING.  I PAID TAXES ON ALL THE BACK
WAGES THAT WAS AWARDED TO ME.  I AM NOW 71 YRS. OLD AND
LIVE IN THAILAND.  MY ONLY SOURCE OF INCOME IS SOCIAL
SECURITY.  THAILAND IS THE ONLY PLACE I CAN AFFORD TO
LIVE ON MY INCOME.

On the basis of Mr. High's submissions, we understand his arguments to be:  (i) He timely filed his income tax return for 2006; (ii) the IRS should be estopped from determining any deficiency against him since it had all the information relating to the payments from Worldwide at the time it issued his refund; (iii) the $11,675 and $54,000 payments from Worldwide were properly excluded from his income because they represented payment for medical expenses and pain and suffering; and (iv) he has limited resources from which to pay any tax liability.  We will address each of Mr. High's contentions below.

On April 12, 2010, respondent moved to submit this case for decision under Rule 122, indicating that Mr. High did not object to the granting of respondent's motion.  On June 9, 2010, respondent's motion was granted, and this case is now before the Court for decision without trial.

## Discussion

As a general rule, the Commissioner's determinations are presumed correct, and the taxpayer has the burden of establishing that the determinations in the notice of deficiency are erroneous.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Mr. High has not contended that the burden of proof has

shifted pursuant to section 7491(a), and the record shows no basis for such a contention.

## I.   Taxability of settlement award

There is no dispute between the parties that the $56,000 that Mr. High received from Worldwide in 2006 constituted gross income.  Instead, the controversy in this case centers on the taxability of the two payments of $11,675 and $54,000--totaling $65,675--that Mr. High received from Worldwide in 2006.  Mr. High maintains that no portion of the $65,675 should constitute gross income to him because it represented payment from Worldwide for his medical expenses and pain and suffering.  We construe Mr. High's position to be that the $65,675 is excludable from his gross income pursuant to section 104(a)(2).

### A.   General legal principles

Section 61(a) provides the following broad definition of the term "gross income":  "Except as otherwise provided in this subtitle, gross income means all income from whatever source derived".  Section 61(a) is thus broad in its scope, and exclusions from gross income must be narrowly construed. Commissioner v. Schleier, 515 U.S. 323, 328 (1995).

Section 104(a) provides that gross income does not include:

> (2) the amount of any damages[6] (other than punitive damages) received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal physical injuries or physical sickness * * *.
>
>     *        *        *        *        *        *        *
>
> * * * For purposes of paragraph (2), emotional distress shall not be treated as a physical injury or physical sickness.  The preceding sentence shall not apply to an amount of damages not in excess of the amount paid for medical care (described in subparagraph (A) or (B) of section 213(d)(1)) attributable to emotional distress.

The legislative history shows that "[i]t is intended that the term emotional distress includes symptoms (e.g., insomnia, headaches, stomach disorders) which may result from such emotional distress."  H. Conf. Rept. 104-737, at 301 n.56 (1996), 1996-3 C.B. 741, 1041.  Therefore, to be excludable from gross income under section 104(a)(2), a settlement award must be paid to a taxpayer on account of physical injury or physical sickness, which does not include emotional distress or symptoms thereof.

Where damages are received pursuant to a settlement agreement like Mr. High's, the nature of the claim that was the actual basis for settlement controls whether those damages are excludable under section 104(a)(2).  <u>United States v. Burke</u>, 504

---

[6]The term "damages received (whether by suit or agreement)" means an amount received (other than workmen's compensation) through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution.  26 C.F.R. sec. 1.104-1(c), Income Tax Regs.

U.S. 229, 237 (1992). Whether the settlement payment is excludable from gross income under section 104(a)(2) depends on the nature and the character of the claims asserted in the lawsuit. See Bent v. Commissioner, 87 T.C. 236, 244 (1986), affd. 835 F.2d 67 (3d Cir. 1987). The determination of the underlying nature of the claim is factual. Robinson v. Commissioner, 102 T.C. 116, 126 (1994), affd. in part, revd. in part and remanded on another issue 70 F.3d 34 (5th Cir. 1995). Where there is a settlement agreement, the determination of the nature of the claim is usually made by reference to the agreement. Id. If the settlement agreement lacks express language stating the claims that payment was to settle, the intent of the payor (here, Worldwide) is critical to that determination. Knuckles v. Commissioner, 349 F.2d 610, 613 (10th Cir. 1965), affg. T.C. Memo. 1964-33.

B.    The nature of Mr. High's claim against Worldwide

The parties have stipulated that Mr. High filed a complaint against his former employer alleging "unlawful discriminatory practices relating to an employment violation of the Human Rights Law of the State of New York". Beyond that, we do not know the exact nature of the underlying claim that Mr. High made before the Division of Human Rights because the complaint is not part of the record in this case. Likewise, the decision of the Division of Human Rights is not before us, and Mr. High gave no testimony

elaborating on the situation.  We therefore do not know the particular wrongs that he alleged his employer committed nor the particular kinds of damages that he alleged he suffered.

As a result, all we can consider in determining whether the payments from Worldwide are excludable from income under section 104(a)(2) is the settlement agreement reached in July 2006 between Worldwide and Mr. High.  Under that Settlement, Mr. High would be paid $110,000 by Worldwide "in full and complete settlement of Complainant's remaining claims in this proceeding".  The Settlement then allocated the payment of $110,000 between (i) $56,000 for "backpay", and (ii) $54,000 for "interest on backpay."  The record includes nothing to contradict that explicit characterization of the payments, and we find that Mr. High's claim had the same character.  That is, he claimed back pay and interest.

C.    Analysis of the two payments

This case does not present the common scenario in which a single lump sum is agreed on as the settlement amount and the settlement agreement is silent as to the allocation of that sum among various kinds of damages.  Cf. Longoria v. Commissioner, T.C. Memo. 2009-162.  Likewise, we are not faced with the task of determining what portion of a settlement, if any, should be attributable to interest.  Instead, the Settlement reached in Mr. High's case was very specific:  $56,000 was explicitly

characterized as back pay and $54,000 was explicitly characterized as interest on that back pay. Mr. High maintains that the two payments of $11,675 and $54,000--totaling $65,675 --received from Worldwide were intended to compensate him for his medical expenses and pain and suffering. We must reject Mr. High's position.

    1.   <u>Worldwide's $54,000 payment</u>

In compliance with the Settlement, on or about July 17, 2006, Worldwide issued a check to Mr. High for $54,000. Consistent with the terms of the Settlement, Worldwide recorded this payment as "interest on legal settlement" in its accounting system. The only evidence that Mr. High offers that the $54,000 should be attributable to anything other than interest is his own uncorroborated assertion in his petition that it was attributable to "18 years of medical expenses, plus pain and suffering". Because Mr. High did not show he made any claim for pain and suffering or medical expenses, and because both the Settlement and Worldwide (as the payor) characterize this $54,000 payment as "interest", we find that the $54,000 Mr. High received from Worldwide was not intended to compensate for any medical expenses or pain and suffering, but instead constituted interest on the back pay that was awarded to Mr. High.

Gross income includes interest. Sec. 61(a)(4). Furthermore, interest on any award is taxable whether the

underlying award is taxable or nontaxable. See <u>Kovacs v. Commissioner</u>, 100 T.C. 124, 128-130 (1993), affd. without published opinion 25 F.3d 1048 (6th Cir. 1994). As a result, we find that the $54,000 Mr. High received from Worldwide in 2006 was not properly excluded from his gross income under section 104(a)(2).

### 2. Worldwide's $11,675 payment

In addition to the $54,000 Mr. High received from Worldwide as interest on his back pay award, which the Settlement expressly called for, Worldwide also issued Mr. High a check for $11,675, on or about June 22, 2006. This $11,675 payment was prior to the Settlement and is not referenced therein. On these facts, we cannot conclude that this $11,675 was attributable to the Settlement of the discrimination complaint on which Mr. High bases his contention under section 104(a)(2). Worldwide did record this payment as "interest on legal settlement" in its accounting system, but there is no evidence that it related to the Settlement as to which the parties have stipulated. Assuming arguendo that this $11,675 payment <u>was</u> part of the discrimination Settlement finalized in July 2006, Mr. High has offered no evidence to refute Worldwide's characterization of this payment as interest in its accounting system. As a result, we find that, in any event, this $11,675 represents interest income to Mr. High

and should not have been excluded from his income under section 104(a)(2).

On the basis of the foregoing, we hold that no portion of the $65,675 Mr. High received from Worldwide in 2006 is excludable from gross income under section 104(a)(2).

## II.  Addition to tax and penalty

### A.    Failure-to-file addition to tax

Section 6651(a)(1) authorizes the imposition of an addition to tax for failure to file a timely return unless the taxpayer proves that such failure is due to reasonable cause and is not due to willful neglect.  See also United States v. Boyle, 469 U.S. 241, 245 (1985); Harris v. Commissioner, T.C. Memo. 1998-332.  Mr. High's return for tax year 2006 was due on April 17, 2007.[7]  Respondent's records, which were submitted as part of the stipulation of facts in this case, indicate that the IRS received Mr. High's return for 2006 on "20070605" (i.e., June 5, 2007).[8] This evidence is sufficient to satisfy respondent's burden of production under section 7491(c), and we so find.  See Cobaugh v. Commissioner, T.C. Memo. 2008-199.

_____

[7]Taxpayers had an additional two days to file their income tax returns for tax year 2006 because April 15, 2007, fell on a Sunday, and the following day, Monday, April 16, 2007, was Emancipation Day, a legal holiday in the District of Columbia.

[8]The stipulation of facts states that respondent's records indicate that the return was filed on June 6, 2005.  This appears to be a typographical error.  We observe that respondent's records indicate that Mr. High's return for tax year 2006 was filed on June 5, 2007.

With regard to the actions of public officials and to official records, we recognize a presumption of their correctness. Riggs Natl. Corp. & Subs. v. Commissioner, 295 F.3d 16, 20 (D.C. Cir. 2002), revg. T.C. Memo. 2001-12; see also Webster v. Estelle, 505 F.2d 926, 929-930 (5th Cir. 1974) ("Official records are entitled to a presumption of regularity"). Such a presumption is not absolute but rather is rebuttable "through clear or specific evidence." Riggs Natl. Corp. & Subs. v. Commissioner, 295 F.3d at 21. As a result, absent some showing of irregularity in the IRS's records, which Mr. High has not alleged or shown, the records serve as presumptive evidence that Mr. High's return for tax year 2006 was untimely filed on June 5, 2007.

In his amendment to petition, Mr. High asserts that "I FILED MY 2006 - TAX RETURN WITH PRO-TAX SERVICES - IN LAS VEGAS ON TIME."[9] Mr. High did not provide any evidence, other than this uncorroborated statement, regarding the date his 2006 return was filed; rather, the case was submitted on a stipulated record under Rule 122. Mr. High declined the chance to offer any argument or explanation to refute the IRS's records when he failed to file a brief in this case.

---

[9]We cannot tell whether the petition asserts that the return was timely filed with the IRS or whether it simply asserts that Mr. High timely gave the return to a preparer and assumes that the preparer filed it timely with the IRS.

Accordingly, we find that Mr. High did not timely file his tax return for 2006, and we hold that Mr. High is liable for the addition to tax under section 6651(a)(1) for that year.

B. <u>Accuracy-related penalty</u>

Section 6662 imposes an "accuracy-related penalty" of 20 percent of the portion of the underpayment of tax attributable to any substantial understatement of income tax. See sec. 6662(a), (b)(2). Pursuant to section 7491(c), the Commissioner bears the burden of production and must produce sufficient evidence showing the imposition of the penalty is appropriate in a given case. <u>Higbee v. Commissioner</u>, 116 T.C. 438, 446 (2001). An understatement of income tax is substantial if it exceeds the greater of $5,000 or 10 percent of the tax required to be shown on the return. Sec. 6662(d)(1). Respondent meets his burden, because the deficiency attributable to the tax is $18,121 and the corrected tax liability is $30,222; thus the understatement is both greater than $5,000 and greater than 10 percent of $30,222. Once the Commissioner meets this burden, the taxpayer must come forward with persuasive evidence that the Commissioner's determination is incorrect. Rule 142(a); <u>Higbee v. Commissioner</u>, 116 T.C. at 447.

A taxpayer who is otherwise liable for the accuracy-related penalty may avoid the liability if he successfully invokes one of three other provisions: Section 6662(d)(2)(B) provides that an

understatement may be reduced, first, where the taxpayer had substantial authority for his treatment of any item giving rise to the understatement or, second, where the relevant facts affecting the item's treatment are adequately disclosed and the taxpayer had a reasonable basis for his treatment of that item. Third, section 6664(c)(1) provides that, if the taxpayer shows that there was reasonable cause for a portion of an underpayment and that he acted in good faith with respect to such portion, no accuracy-related penalty shall be imposed with respect to that portion.

Mr. High did not invoke any of these provisions in anything he submitted in this case. Perhaps the closest he came to such an argument is the assertion in his amendment to petition that the IRS "HAD THE 1099 MISC. FORM, FOR THE 65,675 DOLLARS AT THE TIME THEY MAILED MY REFUND CHECK." If this is intended as an assertion that his receipt of the $65,675 was "adequately disclosed" for purposes of section 6662(d)(2)(B)(ii)(I), then the argument would fail: First, the statute requires both adequate disclosure (in subclause (I)) and a "reasonable basis" (in subclause (II)), the latter of which is lacking here. Second, the employer's submission of Form 1099-MISC hardly constitutes the taxpayer's "disclos[ure] in the return" (emphasis added), as subclause (I) requires. Mr. High did not rebut respondent's showing that he is liable for the accuracy-related penalty. As a

result, we hold that Mr. High is liable for an accuracy-related penalty under section 6662 for tax year 2006.

III. Additional contentions

Mr. High's two additional contentions can be briefly addressed.

A.  Estoppel

Mr. High apparently argues that respondent should be precluded, or estopped, from determining any deficiency against him for tax year 2006 because the IRS issued Mr. High a refund for that year at a time when it had all of the information on which it now bases its proposed adjustments.  If Mr. High had the impression, when he received a refund for 2006, that his business with the IRS for that year was necessarily concluded, then his belief was mistaken.  The IRS is not barred from determining a deficiency in Mr. High's income tax simply because he was previously issued a refund.  See Milleg v. Commissioner, 19 T.C. 395, 398 (1952) ("The allowance of the refund was not a final determination and the respondent determined the deficiency within the time allowed under the statutory provisions.  In the absence of a closing agreement, valid compromise, final adjudication or the running of the statute of limitations, the respondent may make new and different assessment[s] against the same taxpayer, for the same year, and in respect of the same type of tax.").  As a result, the IRS was not precluded from determining a deficiency

against Mr. High for tax year 2006 simply because it had previously issued a refund for that same year.

B.    Inability to pay

Mr. High asserts that he has limited resources from which to pay any tax liability.  However, a taxpayers's ability to pay the tax he owes has no bearing on whether he owes the tax. Mr. High's argument may go towards the collectibility of his tax liability but not its existence.  The Tax Court is a court of limited jurisdiction.  We may therefore exercise jurisdiction only to the extent expressly provided by statute.  Breman v. Commissioner, 66 T.C. 61, 66 (1976).  In a deficiency case like this one, brought under section 6213(a), the Tax Court has jurisdiction to determine a taxpayer's proper amount of tax, additions to tax, and penalties, but it does not have jurisdiction over collection issues.  Cf. sec. 6330(d).  As a result, we lack jurisdiction in the instant case to entertain Mr. High's concerns regarding his limited ability to pay any tax he may owe.

To reflect the foregoing,

Decision will be entered
for respondent.